## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

**MIKE HUCKABEE**

      Plaintiff,

v.

**META PLATFORMS, INC.**

      Defendant

Case No. _____

## COMPLAINT

COMES NOW Plaintiff, Mike Huckabee, and for his Complaint against Meta Platforms, Inc., alleges as follows:

### INTRODUCTION

1.      This case concerns Meta Platforms, Inc.'s approval and maintenance of false and deceptive advertisements that unlawfully appropriated the name, photograph, and image of Mike Huckabee—i.e., his intellectual property. Meta profited from these unlawful advertisements, and because of Meta's approval, these advertisements reached millions of Facebook users.

### PARTIES

2.      Plaintiff Mike Huckabee is a citizen of Arkansas and resident of Pulaski County, Arkansas. Huckabee is a Baptist minister, the former governor of Arkansas, a

two-time presidential candidate, a New York Times best-selling author, and a nationally syndicated radio and television host.

3.      Meta Platforms, Inc., formerly known as Facebook, Inc., is a Delaware corporation with its principal place of business located 1601 Willow Road, Menlo Park, California, 94025. Its registered agent for service of process is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware, 19808.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over these claims because the parties are completely diverse, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

5.      This Court has personal jurisdiction over Meta because Meta is incorporated in Delaware and has engaged in substantial business within this District.

6.      Venue is proper in this District because Meta is incorporated in Delaware. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

7.      Meta is the parent company of Facebook and Instagram—two social media platforms with global reach. Together, Facebook and Instagram have more than 5 billion monthly active users.

8.      As one of the most dominant social media companies in the world, Meta is in the business of selling advertisements to support its operations. In fact, almost 98% of Meta's $134 billion dollars in revenue last year came from the sale of advertisements.

2

9.      Meta allows its advertisers to target their advertisements as broadly or narrowly as they wish. On Facebook, for example, advertisers can pay to have products or other messages appear in users' news feeds. These advertisers can pay even more to have their advertisements appear more prominently on users' news feeds.

10.     Meta collects user data to train machine-learning algorithms to predict what content will keep and attract users. In 2018, Facebook's director of analytics, Dan Zigmond, explained that about 2,000 posts appear on a user's feed every day, but the average user only looks at the first 200 posts. As a result, Meta decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements.

11.     According to Ad Observer, a research project by New York University, online advertisements are usually seen only by the audience the advertiser targets, and then they disappear.

12.     Plaintiff is a nationally recognized politician and political commentator who has spent years cultivating his credibility and image. Between Facebook, X, and Instagram, Plaintiff has more than 3.8 million followers. He has authored fourteen books, hosts a nationally broadcasted television show on Trinity Broadcasting Network, and makes numerous appearances each month on other news networks.

13.     In or around, May of 2024, Plaintiff learned advertisements were appearing on Facebook that claimed he would be leaving Trinity Broadcast Network to pursue "[a] greater purpose":



The supposed greater purpose was to endorse and promote Fortin CBD gummies.

14.    Another advertisement falsely claimed that Plaintiff was suffering from health problems but that a miracle had helped him turn his life around:



Again, the alleged miracle was CBD.

15.     The images used in these advertisements are altered (and potentially AI-generated) photographs of Plaintiff.

16.     A third advertisement took Facebook users to a website that appeared to be FoxNews.com:



The advertisement, however, was not from Fox News. Instead, the advertisement was disguised as Fox News in another ruse to promote Fortin CBD gummies.

17.     Using unauthorized photographs and fictitious quotes, the advertisement claimed Plaintiff was leaving his show on Trinity Broadcasting Network because of a four-year battle with an autoimmune disease. Adding to this lie, the advertisement falsely claimed that Plaintiff used Fortin CBD gummies to replace opioids and painkillers.

18.     The faux Fox News advertisement attributed several fictitious quotes to

Plaintiff, including:

a.  "My health has not been good for years. I was in a four-year battle with
    this autoimmune disease, but without getting into all the details, the
    bottom line is it would leave all my major muscle in pain pretty much
    24 hours a day. This led to extreme sleep deprivation too, which further
    weekend my immune system[.]"

b.  "Some older men and women see CBD as having the hallucinogenic
    effects like 'pot' or 'weed' but that's not true at all. CBD has no THC
    whatsoever, which means there are absolutely no hallucinogenic effects.
    As a God-fearing Christian, I would never in my life take drugs of any
    kind. CBD is completely safe, but the negative stigma around it meant
    there was still a problem with the CBD products on the market."

c.  "After connecting with this world[-]renowned team of doctors and
    scientists who found a solution to this problem, I can confidently say
    CBD is the future of medicine in America. This product is all natural,
    and is especially helpful for older people like myself [sic] battling high
    blood pressure, chronic pain, and sleep deprivation. I've never felt
    healthier[,] and I owe it all to this miracle."

d.  "CBD cured me and can save American lives[.]"

19.     The advertisement referred to Fortin CBD gummies as "Huckabee's

product[,]" inaccurately claiming that Plaintiff is the CEO of Fortin. In a deceptive

attempt to get Facebook users to quickly buy the allegedly Huckabee-owned and -

endorsed CBD gummies, the advertisement claims that Plaintiff's main challenge in

selling the CBD gummies is that demand exceeds supply because Plaintiff's "CBD

wellness line is not only 90% cheaper but also five times more effective than similar

offerings from Bayer and other 'Big Pharma' Companies."

20.    According to Snopes, Meta's Ad Library reveals the advertisements went live on April 9, 2024. These advertisements remained visible and accessible to Facebook users until at least June 6, 2024.

21.    Shortly after a conversation with Plaintiff about his case, links to the advertisements that Plaintiff had shared with undersigned counsel mysteriously became inaccessible.



**This content isn't available right now**
When this happens, it's usually because the owner only shared it with a small group of people, changed who can see it or it's been deleted.

Go to News Feed

Go back
Visit Help Center

22.    Plaintiff has talked to numerous fans who, unfortunately, believed these advertisements were true and purchased the CBD products. Without the unauthorized use of Plaintiff's name, photograph, and likeness, these fans would likely have never purchased the CBD products.

23.    Because Meta approved and maintained advertisements that unauthorizedly used and exploited Plaintiff's name, photograph, and likeness, Plaintiff is now wrongly associated with the CBD industry and marijuana use.

24.     Facebook's hosting of fraudulent advertisements for CBD products is nothing new. Since as early as 2021, news outlets have reported similar instances where Facebook has approved and maintained advertisements that unauthorizedly exploit the name, image, and likeness of other media personalities to sell CBD products. Some of these fraudulent advertisements included: "Laura Ingraham in the Hot Seat with Big Pharma Following Latest Business Venture"; "Big Pharma In Outrage Over Jeanine Pirro's Latest Business Venture – She Fires Back With This!"; "Fox News Cutting Ties With Sean Hannity Over Breach of Contract?"; and "Big Phrama [sic] in Outrage Over Sanjay Gupta's Latest Business Venture – He Fires Back With This!"

## COUNT I
## VIOLATIONS OF THE FRANK BROYLES PUBLICITY PROTECTION ACT
### Arkansas Code Annotated § 4-75-1101 *et seq*.

25.     Plaintiff incorporates all allegations asserted above.

26.     The Frank Broyles Publicity Protection Act ("FBPPA") recognizes that Arkansans "[s]hould have the use of their names, voices, signatures, photographs, and likenesses protected for their benefit and the benefit of their families." Ark. Code Ann. § 4-75-1102(a)(4). Accordingly, the FBPPA "[p]rotect[s] the names, voices, signatures, photographs, and likenesses of the citizens of this state from exploitation and unauthorized commercial use without the consent of the citizen[.]" Ark. Code Ann. § 4-75-1102(a)(4).

8

27.     As an individual, Plaintiff is a person under the FBPPA. Ark. Code Ann. § 4-75-1103(4)(A).

28.     The FBPPA prohibits the unauthorized commercial use of the name, voice, signature, photograph, or likeness of an individual. Ark. Code Ann. § 4-75-1108(a).

29.     "Commercial use" means the use of an individual's readily identifiable name, voice, signature, photograph, or likeness (1) for advertising, selling, or soliciting purchases of products, merchandise, goods, or services, or (2) on or in connection with products, merchandise, goods, or other commercial activity that is not exempt under the FBPPA. Ark. Code Ann. § 4-75-1103(1)(A).

30.     Under Arkansas law, Plaintiff has an intellectual property right in his name, photograph, and likeness. *See* Restatement (Second) of Torts § 652I cmt. b (Am. Law Inst. 1977). And the Third Circuit has recognized that intellectual property includes a person's right to publicity. *Hepp v. Facebook*, 14 F.4th 204, 212–13 (3d Cir. 2021); *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573 (1977) (explaining that the right of publicity is an individual property right that is "closely analogous . . . to patent and copyright" because it focuses "on the right of the individual to reap the reward of his endeavors and [has] little to do with protecting feelings or reputation").

31.     Section 230 of the Communications Decency Act does not shield Meta from a claim under the FBPPA because Plaintiff's claims concern his intellectual property. 47 U.S.C. § 230 (e)(2).

32.     In violation of the FBPPA, Meta approved and maintained advertisements that unauthorizedly appropriated and unlawfully exploited Plaintiff's intellectual property—his name, photograph, and likeness—to sell CBD products.

33.     Plaintiff has never endorsed, used, or otherwise promoted these CBD products. Despite this, Meta approved and maintained advertisements using Plaintiff's name, photograph, and likeness to drive sales for these CBD products. Because of this, Plaintiff is now wrongly associated with the CBD industry.

34.     Meta approved and maintained these advertisements with actual malice or, at least, with reckless disregard to their truthfulness or accuracy. Not only has Plaintiff never used, endorsed, or promoted CBD, but he has been a lifelong opponent of marijuana and its derivatives—i.e., CBD.[1]

## COUNT II
## IVASION OF PRIVACY – FALSE LIGHT AND APPROPRIATION

35.     Plaintiff incorporates all allegations and applications of law asserted above.

36.     Meta's approval and maintenance of advertisements that unauthorizedly used Plaintiff's name and likeness to sell CBD product was an invasion of Plaintiff's privacy.

---

[1] *See, e.g.*, https://hightimes.com/news/former-arkansas-gov-mike-huckabee-slams-cannabis-industry-says-it-targets-gullible-people/;
https://www.christianpost.com/news/mike-huckabee-warns-against-legalizing-marijuana-in-arkansas.html.

37.     Under Arkansas law, the unauthorized appropriation of a person's name or likeness, or publicity that unreasonably places a person in a false light, is an invasion of privacy. *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 637–38, 590 S.W.2d 840, 844–45 (1979).

38.     Here, Meta approved and maintained advertisements that used Plaintiff's name and likeness to sell CBD products that Plaintiff has never used, endorsed, or otherwise promoted.

39.     The advertisements used Plaintiff's name and likeness to falsely claim that Plaintiff not only endorsed the CBD product but also used them to treat an autoimmune disease (which he did not have) and was the CEO of the company that sold them.

40.     As a result of Meta's approval and maintenance of these false advertisements, Plaintiff has now become malignly associated with the CBD industry and has been falsely portrayed as suffering from an autoimmune disease. This publicity puts Plaintiff in a false light, which would be highly offensive to a reasonable person.

41.     Without Meta's approval and maintenance of these advertisements, Plaintiff's image and credibility would not have been harmed.

42.     Plaintiff has never endorsed, used, or otherwise promoted these CBD products. Despite this, Meta approved and maintained advertisements using Plaintiff's name and likeness to drive sales for these CBD products.

43.     Meta approved and maintained these advertisements with actual malice or, at least, with reckless disregard to their truthfulness or accuracy. Not only has Plaintiff

never used, endorsed, or promoted CBD, but he has been a lifelong opponent of marijuana and its derivatives — i.e., CBD. *Supra*, ¶ 33 n. 1.

## COUNT III
## DECLARATORY AND INJUNCTIVE RELIEF

44. Plaintiff incorporates all allegations and application of law asserted above.

45. Pursuant to Arkansas Code Annotated section 16-111-102, Plaintiff seeks a declaration that Meta's actions violate the FBPPA.

46. Plaintiff is entitled to a declaration that, in approving and maintaining advertisements that unauthorizedly use the name, photograph, and likeness of Plaintiff, Meta's conduct was and is unlawful.

47. Plaintiff is entitled to an injunction prohibiting Meta from approving and maintaining advertisements that unauthorizedly use his name, photograph, and likeness in violation of the FBPPA.

48. Pursuant to Arkansas Code Annotated section 16-111-108, upon a determination Meta's actions violate Arkansas law, Plaintiff seeks supplemental relief in the form of disgorgement of all monies Meta reaped by wrongfully approving and maintaining advertisements that unauthorizedly use Plaintiff's name, photograph, and likeness to sell CBD products.

49. Pursuant to Arkansas Code Annotated section 16-111-110, upon a determination that Meta's actions violate Arkansas law, Plaintiff seeks an award of costs.

## COUNT IV
## UNJUST ENRICHMENT

50.     Plaintiff incorporates all allegations and applications of law asserted above.

51.     In violation of Arkansas law, Meta profited from the exploitation and unauthorized use of Plaintiff's name, photograph, and likeness and has been unjustly enriched by such wrongful conduct.

52.     Plaintiff is entitled to restitution from Meta of all monies Meta obtained from the approval and maintenance of unauthorized advertisements exploiting Plaintiff's name, photograph, and likeness.

## PUNITIVE DAMAGES

53.     Plaintiff is entitled to recover punitive damages from Meta for its malicious conduct. In light of the surrounding circumstances, Meta knew or should have known that its conduct would naturally and probably result in damage, yet Meta continued such conduct in reckless disregard of the consequences from which malice may be inferred.

## JURY TRIAL DEMANDED

54.     Plaintiff demands a jury of twelve on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in his favor on all the claims asserted herein, to order all the requested relief pled above, and to provide him all other just and appropriate relief.

Dated: July 1, 2024                     Respectfully submitted,

                                        **BELLEW, LLC**

                                        */s/ Sean J. Bellew*
                                        Sean J. Bellew, Delaware Bar No. 4072
                                        sjbellew@bellewllc.com
                                        2961 Centerville Rd., Ste. 302
                                        Wilmington, DE 19808
                                        (302) 252-4951

                                        **POYNTER LAW GROUP, PLLC**

                                        Scott Poynter, Ark Bar 09077*
                                        scott@poynterlawgroup.com
                                        Daniel Holland, Ark Bar 2019237*
                                        daniel@poynterlawgroup.com
                                        Scout Snowden, Ark. Bar 2021210*
                                        scout@poynterlawgroup.com
                                        Clay Ellis, Ark. Bar 2023183*
                                        clay@poynterlawgroup.com
                                        4924 Kavanaugh Blvd.
                                        Little Rock, AR 72207
                                        (501) 812-3943

                                        **Pro Hac Vice* motions forthcoming