**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MIKE HUCKABEE,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 1:24-cv-00773 (GBW)

**DEFENDANT META PLATFORMS, INC. OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6)**

OF COUNSEL:

Karen L. Dunn
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
kdunn@paulweiss.com

Walter F. Brown
Meredith R. Dearborn
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100
wbrown@paulweiss.com
mdearborn@paulweiss.com

Dated: September 5, 2024

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
   Matthew D. Stachel (No. 5419)
   1313 N. Market Street, Suite 806
   Post Office Box 32
   Wilmington, DE 19899-0032
   Tel.: (302) 655-4410
   mstachel@paulweiss.com

*Attorneys for Defendant Meta Platforms Inc.*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT .........................................................................................1

STATEMENT OF RELEVANT FACTS .........................................................................4

ARGUMENT ...................................................................................................................5

I.    Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims ..............6

    A.    The Complaint Pleads That Meta Is an "Interactive Computer Service Provider." .............................................................................................. 7

    B.    All of Plaintiff's Claims Treat Meta as the Advertisements' "Publisher." ............. 7

    C.    Plaintiff Alleges That the Challenged Advertisements Were "Provided by Another Information Content Provider," Not Meta. ................................... 9

    D.    None of Plaintiff's Claims Qualify for the Intellectual Property Limitation on Section 230 Immunity. ................................................................ 10

II.   Plaintiff Fails to Plausibly Plead the Required Elements of Each of His Arkansas Law Claims. ........................................................................................13

    A.    Count I Fails to Plead A Plausible Claim for Violation of the Frank Broyles Publicity Protection Act. ......................................................... 13

    B.    Count II Fails to Plead Plausible Common Law Appropriation and False Light Invasion-of-Privacy Claims under Arkansas Law. ...................................... 15

    C.    Count IV Fails to State a Claim for Unjust Enrichment under Arkansas Law. ............................................................................................ 18

    D.    Count III Fails to State a Claim Because Declaratory and Injunctive Relief Are Remedies and Plaintiff Failed to State Any Plausible Substantive Claims. ........................................................................................ 19

III.  The Complaint Should Be Dismissed with Prejudice. .......................................................20

CONCLUSION ...............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G.* v. *Chester Upland Sch. Dist.*,
  655 F. App'x 125 (3d Cir. 2016) ............................................20

*Air Evac EMS, Inc.* v. *USAble Mut. Ins. Co.*,
  931 F.3d 647 (8th Cir. 2019) ......................................18, 19

*Ascentive, LLC* v. *Opinion Corp.*,
  842 F. Supp. 2d 450 (E.D.N.Y. 2011) ..............................12

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).........................................................5

*Beeney* v. *FCA U.S., LLC*,
  2024 WL 3444488 (D. Del. July 17, 2024) .......................20

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007).........................................................5

*Brennerman* v. *Guardian News & Media Ltd.*,
  2016 WL 1271461 (D. Del. Mar. 30, 2016) .........................7

*Cabaniss* v. *Hipsley*,
  151 S.E.2d 496 (Ga. Ct. App. 1966)..................................15

*Colonia Ins. Co.* v. *City Nat'l Bank*,
  988 F. Supp. 1242 (W.D. Ark. 1997)............................18, 19

*DiMeo* v. *Max*,
  248 F. App'x 280 (3d Cir. 2007) ............................ *passim*

*Dock* v. *Rush*,
  432 F. App'x 130 (3d Cir. 2011) .......................................20

*Dodrill* v. *Arkansas Democrat Co.*,
  590 S.W.2d 840 (1979)................................................11, 17

*Dyroff* v. *Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ...........................................7

*Ebeid* v. *Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019)........................7

*Fed. Agency of News LLC* v. *Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................................7

*Green* v. *America Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) ..............................................................................6, 8

*Hepp* v. *Facebook*,
    14 F.4th 204 (3d Cir. 2021) ................................................................................11

*Kabbaj* v. *Google Inc.*,
    592 F. App'x 74 (3d Cir. 2015) ...........................................................................19

*Langdon* v. *Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ......................................................................6

*Milam* v. *Bank of Cabot*,
    937 S.W.2d 653 (Ark. 1997) ...............................................................................16

*Newcombe* v. *Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ..............................................................................15

*Obado* v. *Magedson*,
    612 F. App'x 90 (3d Cir. 2015) ..........................................................................6, 9

*Parker* v. *Google, Inc.*,
    242 F. App'x 833 (3d Cir. 2007) .........................................................................20

*Parker* v. *PayPal, Inc.*,
    2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) .......................................................12

*Rosetta Stone Ltd.* v. *Google Inc.*,
    732 F. Supp. 2d 628 (E.D. Va. 2010) ..................................................................12

*Sikhs for Just. "SFJ," Inc.* v. *Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .................................................................7

*Stanley* v. *General Media Communications, Inc.*,
    149 F. Supp. 2d 701 (W.D. Ark. 2001) ...............................................................14

*Steinbuch* v. *Cutler*,
    518 F.3d 580 (8th Cir. 2008) ..............................................................................16

*Whitfield* v. *Am. Fed'n of Gov't Emps.*,
    2020 WL 1310547 (E.D. Ark. Mar. 18, 2020) .....................................................19

*Yeager* v. *KUAF 91.3 NPR Public Radio*,
    2020 WL 2449348 (W.D. Ark. May 12, 2020) ....................................................17

**Statutes**

Communications Decency Act Section 230, 47 U.S.C. § 230.............................................. *passim*

Frank Broyles Publicity Protection Act, Ark. Code Ann. § 4-75-1101 *et seq.*..................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 5

## NATURE AND STAGE OF PROCEEDINGS

Defendant Meta Platforms Inc. ("Meta") respectfully submits this opening brief in support of its motion to dismiss the Complaint (D.I. 1, the "Complaint" or "¶") and the claims asserted against Meta in their entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

In this diversity-jurisdiction action, Plaintiff Mike Huckabee seeks to hold Meta liable under Arkansas law for third parties' allegedly unauthorized use of Plaintiff's name, photograph, and likeness in advertisements run on Facebook to promote the third parties' cannabidiol ("CBD") products.  But Plaintiff's Complaint acknowledges that the third-party advertisers—*not Meta*, which merely owns the Facebook platform on which the third-party advertisements appeared—were responsible for creating the challenged advertisements.  The Complaint acknowledges that Meta *played no role* in the advertisements' content and *had no knowledge* that the advertisements were false before they were published.  Therefore, the Complaint's allegations make clear that Plaintiff's claims are barred under Section 230 of the Communications Decency Act ("Section 230"), 47 U.S.C. § 230(c)(1) because Plaintiff seeks to treat Meta as a publisher of the third parties' alleged false content.  The Complaint's allegations further fail to plead the elements of all of the Arkansas-law claims it purports to assert.  The Complaint should thus be dismissed in its entirety and with prejudice.

*First*, all of Plaintiff's claims against Meta are barred by Section 230.  That statute provides complete immunity from suit and civil liability for state (and federal) law claims to interactive computer service providers, like Meta, who are treated as the publishers of information provided by third-party content providers.  Plaintiff's claims are all premised on allegations that Meta "approved and maintained" the third-party advertisements that made

unauthorized use of Plaintiff's name, photograph, and likeness by "hosting" them on Facebook. This is precisely the type of publishing function for which Section 230 exists to provide interactive computer service providers with complete immunity from suit and civil liability. *See infra*, § I.A.–C.

Nor do Plaintiff's claims fall within Section 230(e)(2)'s carveout for "any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Plaintiff only attempts to plead that Section 230 immunity does not apply to Count I, which asserts a claim for purported violation of the Frank Broyles Publicity Protection Act ("FBPPA"). But the FBPPA expressly provides that the "property rights granted by this subchapter *are not considered intellectual property for purposes of 47 U.S.C. § 230*." Ark. Code Ann. § 4-75-1112(b) (emphasis added). And none of Plaintiff's other claims are intellectual property claims exempt from Section 230 immunity. Plaintiff does not even attempt to plead that they are. Section 230, therefore, requires dismissal of Plaintiff's Complaint against Meta in its entirety. *See infra*, § I.D.

*Second*, each of Plaintiff's Arkansas law claims should be dismissed for several independent pleading deficiencies:

Count I fails to plead a violation of the FBPPA because Meta is a "service provider" of the Facebook service and is not alleged to have had "actual knowledge" of the challenged advertisements' falsity or awareness of facts or circumstances from which a violation of the FBPPA was apparent. Count I also fails because the third-party advertisers—*not Meta*—are alleged to have used Plaintiff's name, photograph, and likeness for their commercial benefit. The Complaint alleges no more than Meta provided advertising without knowledge of its falsity and received no commercial benefit from the advertisements' purpose—sales of CBD products by third parties. *See infra*, § II.A.

Count II fails to plead a plausible claim under Arkansas common law for invasion of privacy – appropriation because the Arkansas common law on this point was abrogated and replaced by the FBPPA in 2016.  Ark Code Ann. § 4-75-1111(b).  Moreover, that cause of action would also fail to state a claim because Meta did not use Plaintiff's name, photograph, or likeness for its commercial benefit—the third-party advertisers did.  Count II also fails to plead a plausible claim under Arkansas common law for invasion of privacy – false light – because Plaintiff nowhere alleges that Meta acted with "actual malice" by publishing the challenged advertisements despite entertaining doubts as to their truth.  *See infra*, § II.B.

Count IV for unjust enrichment fails to state a claim under Arkansas law because Meta did not receive an unlawful benefit that it is bound by equity and good conscience to return.  Plaintiff makes no allegation that Meta knew the advertisements were false or had any involvement in their content.  And Plaintiff acknowledges that the only benefit Meta received was the advertising revenue from the sale of the challenged third-party advertisements—not the alleged increased sales of the CBD products those advertisements were touting—and that Meta provided the advertising services for which it was contracted.  Retaining that revenue does not constitute unjust enrichment under Arkansas law.  *See infra*, § II.C.

Count III for declaratory, injunctive, and other relief must be dismissed because it is not a "claim" at all but a list of remedies.  Because all of Plaintiff's substantive claims are subject to dismissal, he cannot independently maintain a "claim" for these remedies.  *See infra*, § II.D.

*Finally*, Plaintiff's Complaint should be dismissed without leave to amend because any amendment would be futile.  Plaintiff's allegations underscore that Meta is immune under Section 230 from any of the claims that Plaintiff seeks to bring against Meta.  The Third Circuit has repeatedly affirmed dismissals without leave to amend where Section 230 immunity applies.

In addition, Plaintiff cannot cure his failure to plead the elements of each of his claims under clear Arkansas law, which independently warrants denial of leave to amend.  *See infra*, § III.

## STATEMENT OF RELEVANT FACTS[1]

### A.    The Parties

Meta operates Facebook, which, among other things, enables its users to view, promote, and share content on their Facebook profiles.  ¶ 7.  Meta also sells advertising to third-party advertisers, who can pay to have the advertisements they create appear in users' Facebook news feeds as the users navigate the platform.  ¶¶ 8–9.  Plaintiff describes himself as a "nationally recognized politician and political commentator."  ¶ 12.

### B.    The Challenged Third-Party Advertisements Hosted on Meta's Facebook Platform

Plaintiff contends that unidentified third parties used Plaintiff's name, photograph, and likeness in unauthorized advertisements they created promoting their CBD products, which made false claims about Plaintiff and falsely attributed certain statements to him.  ¶¶ 13–19.  In particular, Plaintiff challenges three third-party advertisements that ran on the Facebook platform between April 9, and June 6, 2024.  ¶¶ 13–16, 20.  Plaintiff alleges that all of these advertisements have been removed from, and are no longer accessible on, the Facebook platform.  ¶¶ 20–21.

According to Plaintiff, "Meta approved and maintained [the challenged] advertisements that unauthorizedly used and exploited Plaintiff's name, photograph, and likeness" by "hosting" them on its Facebook platform.  ¶¶ 23–24; *see also* ¶¶ 32–34, 38, 41–43, 46–47.  But Plaintiff pleads no facts suggesting that Meta knew the challenged advertisements were false before they

---

[1]    All well-pleaded factual allegations are treated as true for purposes of this motion only.

were posted or that Meta had any involvement in their creation or content. *See id.* Plaintiff concedes that third parties created the advertisements that promoted the sale of Fortin CBD products—which Meta does not manufacture or distribute. ¶¶ 13–19. Indeed, the Complaint acknowledges that Meta is "in the business of selling advertisements," from which it derived "almost 98% of . . . [its] revenue last year," and Meta "allows *its advertisers* to target *their advertisements* as broadly or narrowly as *they wish*." ¶¶ 8–9 (emphasis added). "*These advertisers* can pay even more to have *their advertisements* appear more prominently on users' news feeds." ¶ 9 (emphasis added).

### C.    Plaintiff's Claims

The Complaint brings three "counts" that assert four substantive causes of action under Arkansas law against Meta and one "count" seeking certain remedies. In Count I, Plaintiff alleges Meta violated the FBPPA. ¶¶ 25–34. In Count II, Plaintiff asserts Arkansas common law invasion-of-privacy claims for appropriation and false light. ¶¶ 35–43. In Count IV, Plaintiff asserts a claim for unjust enrichment under Arkansas law. ¶¶ 50–52. Finally, in Count III, Plaintiff brings a "claim" for declaratory and injunctive relief, disgorgement, and costs, if Meta were found liable for any of Plaintiff's substantive claims in Counts I-II and IV. ¶¶ 44–49.

### ARGUMENT

To survive a Rule 12(b)(6) motion, each of Plaintiff's claims must be pleaded with sufficient detail to be "plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). In evaluating the Complaint's allegations, courts are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly* at 558. Plaintiff comes nowhere close to satisfying his pleading burden here.

I.     **Section 230 of the Communications Decency Act Bars All of Plaintiff's Claims**

Section 230 provides not only complete immunity to online services from any civil liability for third-party content on those platforms, but also (and critically) *immunity from suit*. In *Green* v. *America Online (AOL)*, the Third Circuit explained that Section 230 "'*precludes courts from entertaining claims* that would place a computer service provider in a publisher's role,' and *therefore bars 'lawsuits* seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content.'"  318 F.3d 465, 471 (3d Cir. 2003) (quoting *Zeran* v. *Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis added)); *accord Obado* v. *Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015); *DiMeo* v. *Max*, 248 F. App'x 280, 281–82 (3d Cir. 2007); *Langdon* v. *Google, Inc.*, 474 F. Supp. 2d 622, 630–31 (D. Del. 2007).  In particular, Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* at § 230(e)(3). Section 230 immunity applies where, as here, a complaint's allegations show that (1) the defendant is a provider of an interactive computer service; (2) the cause of action treats the defendant as a publisher or speaker of information; (3) the information at issue is provided by another information content provider; and (4) no exception to Section 230 immunity applies.  *See Obado*, 612 F. App'x at 93; *DiMeo*, 248 F. App'x at 282.  If a complaint's allegations fail to overcome Section 230 immunity, it must therefore be dismissed.

## A.    The Complaint Pleads That Meta Is an "Interactive Computer Service Provider."

Section 230 defines an interactive computer service provider as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  "Websites have consistently been held to be 'interactive computer services' as they enable 'computer access by multiple users to a computer server.'"  *Brennerman* v. *Guardian News & Media Ltd.*, 2016 WL 1271461, at *1 (D. Del. Mar. 30, 2016); *see also Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) ("Websites are the most common interactive computer services.").

Here, Plaintiff alleges that "Meta is the parent company of Facebook and Instagram—two social media platforms" and that Facebook provides a website on which "advertisers can pay to have products or other messages appear in users' news feeds."  ¶¶ 7, 9.  Thus, the Complaint alleges that Meta is an "interactive computer service" for purposes of Section 230.  *See, e.g.*, *DiMeo*, 248 F. App'x 280, 282 ("[defendant's] website is an interactive computer service because it enables computer access by multiple users to a computer server.").  Indeed, courts have repeatedly held that Meta—formerly known as Facebook—is an "interactive computer service" for purposes of Section 230.  *Fed. Agency of News LLC* v. *Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020); *Ebeid* v. *Facebook, Inc.*, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019); *Sikhs for Just. "SFJ," Inc.* v. *Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), *aff'd sub nom. Sikhs for Just., Inc.* v. *Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017).

## B.    All of Plaintiff's Claims Treat Meta as the Advertisements' "Publisher."

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when the claim seeks to impose liability on the service provider for the purported exercise of "editorial

functions" with respect to the challenged content.  *DiMeo*, 248 F. App'x at 282.  Editorial

functions include "decisions relating to the monitoring, screening, and deletion of content from

[the defendant's] network," which are "actions quintessentially related to a publisher's role."

*Green*, 318 F.3d at 471.  Accordingly, the Third Circuit has held that "Section 230 'specifically

proscribes liability' in such circumstances."  *Id.* (quoting *Zeran*, 129 F.3d at 332–33)*.*

      All of Plaintiff's claims are premised on the rote and conclusory allegation that Meta

"approved and maintained" advertisements from third-party advertisers that made unauthorized

use of Plaintiff's name and likeness.  ¶ 32 (Count I) ("In violation of the FBPPA, Meta *approved*

*and maintained* advertisements that unauthorizedly appropriated and unlawfully exploited

Plaintiff's intellectual property—his name, photograph, and likeness—to sell CBD products."

(emphasis added)); ¶ 36 (Count II) ("Meta's *approval and maintenance* of advertisements that

unauthorizedly used Plaintiff's name and likeness to sell CBD product was an invasion of

Plaintiff's privacy." (emphasis added)); ¶ 40 (Count II) ("As a result of Meta's *approval and*

*maintenance* of these false advertisements, Plaintiff has now become malignly associated with

the CBD industry . . . [which] puts Plaintiff in a false light" (emphasis added)); ¶ 46 (Count III)

("Plaintiff is entitled to a declaration that, in *approving and maintaining* advertisements that

unauthorizedly use the name, photograph, and likeness of Plaintiff, Meta's conduct was and is

unlawful." (emphasis added)); ¶ 47 (Count III) ("Plaintiff is entitled to an injunction prohibiting

Meta from *approving and maintaining* advertisements that unauthorizedly use his name,

photograph, and likeness in violation of the FBPPA." (emphasis added)); ¶ 52 (Count IV)

("Plaintiff is entitled to restitution from Meta of all monies Meta obtained from the approval and

maintenance of unauthorized advertisements exploiting Plaintiff's name, photograph, and

likeness.").  These allegations seek to hold Meta liable for the exercise of "a publisher's

8

traditional editorial functions," including "deciding whether to publish [or] withdraw" third-party content. *DiMeo*, 248 F. App'x at 282; *see also Obado*, 612 F. App'x at 93 ("[D]efendants also cannot be held liable for failing to withdraw any of the alleged defamatory statements.").

Plaintiff also asserts that Meta exercises control over the reach of particular advertisements, including by "allow[ing] its advertisers to target their advertisements as broadly or narrowly as they wish" and "collect[ing] user data to train machine-learning algorithms to predict what content will keep and attract users."  ¶¶ 9–10.  But this too falls within a publisher's typical editorial function and does not impact Meta's immunity from suit.  The Third Circuit's decision in *Obado* is illustrative.  There, the court affirmed the dismissal of a complaint, reasoning that the defendants "were alleged by [plaintiff] to be internet host providers who provided an interactive computer service"; "that the allegedly actionable content originated from other information content providers"; and "that the defendants were treated in the [complaint] as publishers of the allegedly actionable content."  *Obado*, 612 F. App'x at 93.  The court further reasoned that the trial court "correctly determined that [plaintiff's] allegation that the defendants manipulated search engines to maximize search results relating to the alleged defamatory content does not affect their immunity from suit."  *Id.*

### C.    Plaintiff Alleges That the Challenged Advertisements Were "Provided by Another Information Content Provider," Not Meta.

Section 230 immunity applies to published content "provided by another information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content.  47 U.S.C. § 230(c), (f)(3).  Critically, Plaintiff nowhere alleges that Meta was involved in the creation or development of any offending content.  To the contrary, the Complaint acknowledges that the advertisements sought to promote the sale of CBD products Meta does not manufacture or distribute, ¶¶ 13–19, and that Meta

instead sells advertisements (accounting for almost 98% of revenue last year) and "allows *its advertisers* to target *their advertisements* as broadly or narrowly as *they wish*," ¶ 9 (emphasis added).  The Complaint contains no allegations that Meta coordinated with the third-party advertisers, participated in the alleged doctoring of images, or drafted any of the advertisements' content.  Instead, the Complaint alleges only that Meta "approved," "maintained," and "hosted" the challenged advertisements.  ¶¶ 23–24, 32–34, 38, 42–43, 46–47.  Those allegations are conclusory and devoid of specific plausible facts to support them, and can be rejected outright on that basis.  But even if they were not conclusory, such allegations would fail under Section 230 because they plead no involvement by Meta in the creation of the third-party advertisements.  In sum, Plaintiff's allegations make clear that Meta was not "an information content provider" in connection with the challenged advertisements.  *DiMeo*, 248 F. App'x at 282.

> **D.    None of Plaintiff's Claims Qualify for the Intellectual Property Limitation on Section 230 Immunity.**

Presumably aware that the Complaint's allegations cannot withstand Section 230 immunity, Plaintiff attempts to fit only one of his claims within Section 230's carveout for "any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2).  Even that attempt fails.  Because none of Plaintiff's claims pertain to intellectual property, Section 230 immunity bars his Complaint against Meta, and it should be dismissed.

*First*, the lone claim that Plaintiff attempts to plead is exempt from Section 230 immunity is his claim under the FBPPA (i.e., Count I).  ¶ 31 ("Section 230 of the Communications Decency Act does not shield Meta from a claim under the FBPPA because Plaintiff's claims concern his intellectual property.").  However, the plain language of Section 1112(b) of the FBPPA expressly provides that "the property rights granted by this subchapter *are not*

*considered intellectual property for purposes of 47 U.S.C. § 230*." Ark. Code Ann. § 4-75-1112(b) (emphasis added). Accordingly, Section 230 bars Count I.

The Complaint's reliance on *Hepp* v. *Facebook*, 14 F.4th 204 (3d Cir. 2021), *see* ¶ 30, is misplaced. In *Hepp*, the Third Circuit held that a claim under Pennsylvania's statutory right of publicity fell within Section 230(e)(2)'s limitation on immunity because it was a law pertaining to intellectual property. *Hepp*, 14 F.4th at 212–14. Unlike the FBPPA, however, the Pennsylvania statute did *not* expressly provide that the right of publicity was not to be considered intellectual property for purposes of Section 230. The Third Circuit in *Hepp* also recognized that its holding did not extend beyond the Pennsylvania statutory right of publicity, explaining that it "express[ed] no opinion as to whether other states' rights of publicity qualify as intellectual property as a matter of federal law." *Id*. at 214.

*Second*, Count II—which Plaintiff does not attempt to allege is exempted from Section 230 immunity as relating to intellectual property—brings Arkansas common law claims for invasion of privacy (appropriation) and invasion of privacy (false light). To begin with, at common law, these claims belonged to the invasion of privacy family of torts and did not carry with them property rights—much less intellectual property rights, like a right of publicity. The invasion of privacy includes: (i) unreasonable intrusion upon the seclusion of another; (ii) appropriation of the other's name or likeness; (iii) unreasonable publicity given to the other's private life; and (iv) publicity that unreasonably places the other in a false light before the public. *See Dodrill* v. *Arkansas Democrat Co.*, 590 S.W.2d 840, 844 (1979) (adopting Restatement (Second) of Torts). In any event, when the Arkansas legislature enacted the FBPPA in 2016 (eight years before the challenged advertisements were published), it made this fact clear by abrogating any common law right of publicity. Ark Code Ann. § 4-75-1111 (b) ("Except as

provided in this subchapter, a right of publicity in the use of the name, voice, signature, photograph, or likeness of an individual *does not exist*.") (emphasis added).  Accordingly, to the extent that common law appropriation and false light claims exist after the FBPPA was enacted, they belong solely to the invasion of privacy family of torts and are not property rights at all.

Moreover, as discussed more fully below, in enacting the FBPPA, the Arkansas legislature entirely eliminated common-law appropriation claims.  *See* Ark. Code Ann. § 4-75-1111(a) (providing that the "[r]emedies granted by this subchapter shall constitute the *exclusive basis* for asserting a claim for the unauthorized commercial use of the name, voice, signature, photograph, or likeness of an individual.") (emphasis added); *infra*, § II.A.

*Third*, Count IV asserts an unjust enrichment claim under Arkansas law against Meta to recover the purported benefit of the advertising revenue Meta obtained from the third-party advertisements.  But, as courts have held, state law unjust enrichment claims are barred and preempted by Section 230 immunity.  *See Rosetta Stone Ltd.* v. *Google Inc.*, 732 F. Supp. 2d 628, 632–33 (E.D. Va. 2010) ("Because the purpose of the [Communications Decency Act] is to shield interactive computer providers from the fraudulent and abusive conduct of third parties[], it is applicable to the instant case, warrants granting immunity to Google, and bars Rosetta Stone from any recovery under a claim for unjust enrichment."), *aff'd*, 676 F.3d 144 (4th Cir. 2012); *see also Parker* v. *PayPal, Inc.*, 2017 WL 3508759, at *3 (E.D. Pa. Aug. 16, 2017) (dismissing unjust enrichment claims as preempted and barred by Section 230); *Ascentive, LLC* v. *Opinion Corp.*, 842 F. Supp. 2d 450, 471–72 (E.D.N.Y. 2011) (similar).

*Finally*, as discussed in more detail below, Count III for declaratory and injunctive relief, as well as disgorgement and costs, does not assert a substantive claim but a list of remedies if

Meta is found liable for the other claims. Because Plaintiff's other claims are barred by Section 230 immunity, Count III is thus likewise barred.

* * *

Accordingly, the Complaint fails to plead any plausible claim that can overcome Section 230 immunity. The Complaint should therefore be dismissed in its entirety.

## II. Plaintiff Fails to Plausibly Plead the Required Elements of Each of His Arkansas Law Claims.

In addition to being barred by Section 230 immunity, each of Plaintiff's Arkansas law claims fails to state a claim for relief. They should thus be dismissed in their entirety for the pleading deficiencies discussed below, each of which provides an independent basis warranting dismissal.

### A. Count I Fails to Plead A Plausible Claim for Violation of the Frank Broyles Publicity Protection Act.

To state a claim under the FBPPA, a plaintiff must plead that: (1) the defendant used the plaintiff's name, voice, signature, photograph, or likeness; (2) the appropriation was for the defendant's commercial benefit; and (3) the appropriation was without the plaintiff's consent. Ark. Code Ann. § 4-75-1108. In addition, the FBPPA provides that "[i]t is not a violation of this subchapter if the name, voice, signature, photograph, or likeness of an individual is used" by "a service provider of a system or network if the service provider: (i) [d]oes not have actual knowledge that a photograph or likeness on the system or network is in violation of this subchapter; or (ii) [i]n the absence of such actual knowledge, is not aware of facts or circumstances from which a violation of this subchapter is apparent." Ark. Code Ann. § 4-75-1110(a)(1)(F). The Complaint lacks any factual allegations—as opposed to conclusions— sufficient to allege a plausible claim under the FBPPA against Meta.

13

*First*, Meta is exempt from liability under the FBPPA's plain language because Plaintiff fails to plead that Meta actually knew the challenged advertisements were in violation of the FBPPA or was aware of facts or circumstances from which a violation of the FBPPA was apparent. Plaintiff acknowledges that Meta is the service provider of a system or network—the Facebook platform—on which the challenged third-party advertisements were hosted. ¶¶ 8, 13–16. But Plaintiff only alleges that Meta "approved and maintained" the challenged advertisements by "hosting" them and, in conclusory fashion, asserts that Meta did so "with actual malice or, at least, with reckless disregard to their truthfulness or accuracy." ¶¶ 23–24, 34. There are thus no factual allegations suggesting Meta *knew* the challenged advertisements were false when made or that it was aware of facts or circumstances from which a violation of the FBPPA was apparent.

*Second*, Plaintiff fails to allege that Meta—as opposed to the third-party advertisers— "used" Plaintiff's name and likeness for its "commercial benefit." Plaintiff acknowledges that "Meta is in the business of selling advertisements," ¶ 8, but nowhere alleges that Meta created, developed, or contributed to the content of the challenged advertisements. To the contrary, the Complaint alleges that the challenged advertisements were created by third parties who used them to promote their CBD products. ¶¶ 13–20. The only commercial benefit that Meta is alleged to have received was revenue it earned as a distributor of the third-party content, which is unrelated to the contents of the challenged advertisements and the alleged appropriation of Plaintiff's name and likeness.

*Stanley* v. *General Media Communications, Inc.*, 149 F. Supp. 2d 701 (W.D. Ark. 2001), underscores the legal insufficiency of Plaintiff's Complaint. In that case, the plaintiffs asserted common law appropriation claims under Arkansas law (which contain the same elements as

14

claims under the FBPPA), alleging that their names and photos appeared in a magazine without their consent and commercially benefited the defendants. *Id.* at 706. The court disagreed, granting the defendants' motions for summary judgment. As to one defendant, the court reasoned that no appropriation for commercial benefit occurred where "no evidence suggests that [the defendant] had any participation in the publication of the photo or the accompanying text." *Id.* As to another defendant, the court reasoned that the photo was "in no way used to advertise the magazine" but rather simply appeared in the background of a story in the magazine. *Id.*

Other courts have likewise found that a publisher of false third-party advertisements does not, merely by publishing those advertisements without knowledge of their falsity, misappropriate a plaintiff's name, photograph, or likeness for its "commercial benefit." *See Newcombe* v. *Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir. 1998) ("[U]se of [plaintiff's] likeness" did not "directly benefit[] [defendant magazine publishers] because the benefit they received—payment for the advertising space—was unrelated to the contents of the advertisement"); *see also Cabaniss* v. *Hipsley*, 151 S.E.2d 496, 506 (Ga. Ct. App. 1966) (where publisher was "merely the conduit through which the advertising and publicity matter of customers was transmitted by [the third-party advertiser] to the public," reasoning that a publisher's participation "was merely passive" and any appropriation "did not inure to [the publisher's] benefit, use or advantage, but to that of his advertiser").

### B. Count II Fails to Plead Plausible Common Law Appropriation and False Light Invasion-of-Privacy Claims under Arkansas Law.

Plaintiff also asserts two Arkansas common law claims against Meta for (i) invasion of privacy – appropriation and (ii) invasion of privacy – false light. Neither claim is viable.

*First*, Plaintiff's claim for alleged appropriation of his name and likeness fails because the common-law tort of invasion of privacy – appropriation was abrogated by the enactment of

FBPPA in 2016—eight years before the challenged third-party advertisements were published. Under Arkansas common law, a claim for appropriation existed where a defendant engaged in the commercial use of a person's name or likeness without authorization. *Steinbuch* v. *Cutler*, 518 F.3d 580, 590 (8th Cir. 2008) (explaining that an Arkansas invasion of privacy – appropriation claim requires a plaintiff to plead and later prove that the defendant "misappropriate[ed] the plaintiff's name or likeness for the defendant's commercial benefit"); *accord Milam* v. *Bank of Cabot*, 937 S.W.2d 653, 657 (Ark. 1997) (common law tort of appropriation "consists of the use of the plaintiff's name or likeness for the defendant's benefit"). The FBPPA, however, abrogated the common law claim and replaced it with the statutory claim. Section 4-75-1111(a) of that statute provides that the "[r]emedies granted by this subchapter shall constitute the *exclusive basis* for asserting a claim for the unauthorized commercial use of the name, voice, signature, photograph, or likeness of an individual." Ark. Code Ann. § 4-75-1111(a) (emphasis added). Plaintiff's common-law appropriation claim is premised on the alleged unauthorized commercial use of his name and likeness to promote CBD products, ¶ 38, and so it has been replaced by the FBPPA, which provides the "exclusive basis" for asserting any such claim.

Moreover, as discussed above with respect to Count I, this claim would also fail to state a claim for failure to plausibly plead that Meta "used" Plaintiff's name, photograph, or likeness for its "commercial benefit." *Supra*, § II.A. Again, Plaintiff concedes that Meta only sold advertising and had no participation in the advertisements' content. *Id.* Plaintiff likewise concedes that Meta was not involved in the business that the advertisements targeted—the sale of CBD products. *Id.*

16

*Second*, Plaintiff's Arkansas common law invasion of privacy claim – false light fails to state a claim because the Complaint failed to plead that Meta acted with actual malice in connection with the challenged advertisements.  To state an actionable false-light claim, Plaintiff was required to plead plausible factual allegations that "(1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Dodrill*, 590 S.W.2d 840, 845 (1979).  To satisfy the second element, the Arkansas Supreme Court has long held that the plaintiff must establish 'actual malice' by the defendant, which cannot be satisfied by "mere negligence" and requires a showing that "the Defendant, in fact, entertained serious doubts as to the truth of his publication." *Id.*  Here, Plaintiff failed to plausibly allege that Meta entertained any doubts as to the truth of the advertisements or any involvement in the content of the advertisements before they were published.

*Yeager* v. *KUAF 91.3 NPR Public Radio*, 2020 WL 2449348 (W.D. Ark. May 12, 2020), is instructive.  In that case, the plaintiff sued NPR and a local affiliate, asserting a false-light claim, after the radio station played a story that accused the plaintiff of purchasing his own album from an online marketplace to generate publicity.  *Id.* at *1.  The plaintiff alleged that the author "made no effort to verify the truth of these statements and failed to contact him." *Id.* at *2.  The court dismissed the false-light claim, reasoning that "'[a]ctual malice' means that the defendant must have 'entertained serious doubts as to the truth of his publication'" and that the purported "fail[ure] to do proper due diligence on their reporting about him" was "not enough to allege actual malice." *Id.* at *5.  Here, Plaintiff alleges no more than that Meta "approved and maintained" the challenged advertisements by "hosting" them on its Facebook platform without

independently evaluating their veracity.  ¶ 24; *see also* ¶¶ 23, 38, 41–43.  Such allegations do not plead actual malice by Meta.  The Complaint lacks any well-pleaded factual allegations that Meta entertained doubts about the truth of the challenged advertisements and yet published them.

### C.    Count IV Fails to State a Claim for Unjust Enrichment under Arkansas Law.

Under Arkansas law, "[t]o find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore."  *Air Evac EMS, Inc.* v. *USAble Mut. Ins. Co.*, 931 F.3d 647, 655 (8th Cir. 2019) (citing *Campbell* v. *Asbury Auto., Inc.*, 381 S.W.3d 21, 36 (Ark. 2011)).  However, "[t]here must be some operative act, intent, or situation to make the enrichment unjust and compensable."  *Id*.  "One is not unjustly enriched by receipt of that to which he is legally entitled" and "[n]o recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it."  *Colonia Ins. Co.* v. *City Nat'l Bank*, 988 F. Supp. 1242, 1254 (W.D. Ark. 1997).  Further, "[o]ne who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right."  *Air Evac EMS*, 931 F.3d at 655; *accord Colonia*, 988 F. Supp. at 1254.

Here, Plaintiff alleges that Meta received a benefit in the form of advertising revenue from the challenged third-party advertisements posted on the Facebook platform, and seeks restitution of "all monies Meta obtained from the approval and maintenance of unauthorized advertisements exploiting Plaintiff's name, photograph, and likeness."  ¶ 52.  But as Plaintiff concedes, "Meta is in the business of selling advertisements," ¶ 8, and Plaintiff does not allege that Meta was at fault for creating the challenged third-party advertisements or knew they were false and yet published them.  There can be no allegation that Meta did not provide the advertising services that it was contracted to provide or that it received an unjust benefit based on the alleged unauthorized use of Plaintiff's name, photograph, or likeness.  Therefore, the revenue

that Meta received for the contracted advertising services "did not constitute money that it 'ought not to retain.'"  *Air Evac EMS*,  931 F.3d at 655 (affirming dismissal of unjust enrichment claim where the defendant "was not unjustly enriched because it was acting in accordance with its 'contractual rights'"); *see also Colonia*, 988 F. Supp. at 1254 (dismissing unjust enrichment claim on summary judgment where plaintiff "was an employee of [the defendant's company] and was entitled to compensation for her services").  Accordingly, Plaintiff fails to plead a claim for unjust enrichment against Meta.

### D.    Count III Fails to State a Claim Because Declaratory and Injunctive Relief Are Remedies and Plaintiff Failed to State Any Plausible Substantive Claims.

The Third Circuit and other courts have long recognized that declaratory and injunctive relief are remedies, not causes of action, and so they cannot survive if a plaintiff's substantive causes of action are subject to dismissal.  In *Kabbaj* v. *Google Inc.*, the Third Circuit affirmed the district court's dismissal of "a 'Count' for 'Declaratory and Injunctive Relief,'" where the underlying substantive claims were barred by Section 230.  592 F. App'x 74, 74 n.2 (3d Cir. 2015).  The court reasoned that "declaratory and injunctive relief are remedies rather than causes of action" so "the District Court [] properly dismissed [plaintiff's] request for injunctive and declaratory relief" because "the remaining counts of [plaintiff's] complaint failed to state a claim upon which relief could be granted."  *Id.*; *see also Whitfield* v. *Am. Fed'n of Gov't Emps.*, 2020 WL 1310547, at *9 (E.D. Ark. Mar. 18, 2020) ("An injunction is a remedy, not a separate cause of action.  Because all of plaintiffs' substantive claims under federal law fail, plaintiffs' requests for injunctive relief based on those federal claims must be denied.") (citing *Great-W. Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 211 n.1 (2002)).  The same result is warranted here.  Because Plaintiff has failed to state any viable substantive claims, his "claim" for declaratory and

injunctive relief, ¶¶ 45–47, as well as the ancillary remedies of disgorgement and costs that Plaintiff seeks, ¶¶ 48–49, should be dismissed as well.

## III.    The Complaint Should Be Dismissed with Prejudice.

Granting leave to amend is not warranted if any amendment would be futile. *Dock* v. *Rush*, 432 F. App'x 130, 134 (3d Cir. 2011) (affirming dismissal of complaint with prejudice and denial of leave to amend where amendment would be futile); *Beeney* v. *FCA U.S., LLC*, 2024 WL 3444488, at *1 (D. Del. July 17, 2024) (denying leave to amend because any amendment would be futile). An amendment would be futile where the complaint's defects "could not be cured by additional facts," such that any amended complaint could not survive a motion to dismiss. *A.G.* v. *Chester Upland Sch. Dist.*, 655 F. App'x 125, 129 (3d Cir. 2016) (affirming district court's denial of leave to amend because any amendment would be futile).

Here, Plaintiff's claims seek to treat Meta as a publisher and hold it liable for third-party advertisements, so they will necessarily be barred by Section 230(c)(1) no matter what additional facts Plaintiff may plead. For this reason, courts routinely deny leave to amend when CDA immunity applies. *See DiMeo* v. *Max*, 248 F. App'x 280, 282–283 (3d Cir. 2007) (concluding district court did not err when it denied motion for leave to amend because Section 230 barred the plaintiff's claims); *Parker* v. *Google, Inc.*, 242 F. App'x 833, 839 (3d Cir. 2007) (concluding district court properly denied motion for leave to amend because, among other things, any attempt to replead claims would be barred under Section 230). Additionally, each of Plaintiff's claims also fails to plead critical elements necessary to establish a plausible claim for relief under each cause of action that cannot be overcome by any amendment.

## <u>CONCLUSION</u>

The Complaint should be dismissed in its entirety and with prejudice.

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

OF COUNSEL:                                      By:    */s/ Matthew D. Stachel*
                                                        Matthew D. Stachel (No. 5419)
Karen L. Dunn                                           1313 N. Market Street, Suite 806
PAUL, WEISS, RIFKIND,                                   Post Office Box 32
  WHARTON & GARRISON LLP                                Wilmington, DE 19899-0032
2001 K Street, NW                                       Tel.: (302) 655-4410
Washington, DC 20006-1047                               mstachel@paulweiss.com
Tel.: (202) 223-7300
kdunn@paulweiss.com                              *Attorneys for Defendant Meta Platforms Inc.*

Walter F. Brown
Meredith R. Dearborn
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100
wbrown@paulweiss.com
mdearborn@paulweiss.com

Dated: September 5, 2024

21