# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIKE HUCKABEE, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Civil Action No. 1:24-cv-00773 (GBW) |

**DEFENDANT META PLATFORMS, INC.'s REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6)**

OF COUNSEL:

Karen L. Dunn
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
kdunn@paulweiss.com

Walter F. Brown
Meredith R. Dearborn
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100
wbrown@paulweiss.com
mdearborn@paulweiss.com

Dated: October 28, 2024

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
Matthew D. Stachel (No. 5419)
1313 N. Market Street, Suite 806
Post Office Box 32
Wilmington, DE 19899-0032
Tel.: (302) 655-4410
mstachel@paulweiss.com

*Attorneys for Defendant Meta Platforms Inc.*

# TABLE OF CONTENTS

**Page**

Summary of Argument .....1

Argument .....2

I. Plaintiff's Claims Are All Barred by Section 230 Immunity. .....2

A. The Complaint Does Not Plausibly Allege That Meta Materially Contributed to the Content of the Challenged Advertisements. ..... 2

B. The Complaint Pleads Meta Is an Interactive Computer Service—Not a Content Provider. ..... 4

C. No Exception under Section 230 Applies to Plaintiff's Claims. ..... 5

II. Count I Fails to Plead a Plausible Violation of the Frank Broyles Publicity Protection Act Claim.....6

III. Count II Fails to Plead a Plausible Common Law Appropriation Claim under Arkansas Law.....8

IV. Count II Fails to Plead a Plausible Common Law False Light Invasion-of-Privacy Claim under Arkansas Law.....9

V. Count IV Fails to Plead an Unjust Enrichment Claim under Arkansas Law.....9

VI. Plaintiff Acknowledges That Count III Does Not State a Separate Claim for Relief.....10

VII. Plaintiff's Improper Request for Leave to Amend Should Be Denied. .....10

CONCLUSION.....10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Evac EMS, Inc.* v. *USAble Mutual Insurance Company*,
    931 F.3d 647 (8th Cir. 2019) ...................................................................................................10

*Anderson* v. *TikTok, Inc.*,
    116 F.4th 180 (3d Cir. 2024) ......................................................................................................2

*Cabaniss* v. *Hipsley*,
    151 S.E.2d 496 (Ga. Ct. App. 1966) ..........................................................................................8

*Dodrill* v. *Arkansas Democrat Co.*,
    590 S.W.2d 840 (Ark. 1979) ......................................................................................................9

*Dyroff* v. *Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ....................................................................................................3

*Fed. Agency of News LLC* v. *Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ......................................................................................5

*Fletcher-Harlee Corp.* v. *Pote Concrete Contr., Inc.*,
    482 F.3d 247 (3d Cir. 2007) .....................................................................................................10

*Force* v. *Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .........................................................................................................3

*Forrest* v. *Meta Platforms, Inc.*,
    2024 WL 3024642 (N.D. Cal. June 17, 2024) ...........................................................................3

*Fraley* v. *Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................................................5

*Frederico* v. *Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ..................................................................................................8, 10

*Kellman* v. *Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ........................................................................................4

*Newcombe* v. *Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ......................................................................................................8

*Pace* v. *Baker-White*,
    432 F.Supp.3d 495 (E.D. Pa. 2020) ............................................................................................3

*Sikhs for Justice "SFJ," Inc.* v. *Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................................4

*Stanley* v. *General Media Comms., Inc.*,
    149 F. Supp. 2d 701 (W.D. Ark. 2001)................................................................................7

**Statutes**

Communications Decency Act Section 230, 47 U.S.C. § 230....................................................5, 6

Frank Broyles Publicity Protection Act, Ark. Code Ann. § 4-75-1101 *et seq*.........................6, 8, 9

## SUMMARY OF ARGUMENT

Defendant Meta Platforms Inc.'s opening brief (D.I. 18, "OB") showed that the Complaint (D.I. 1, "¶") should be dismissed with prejudice. Plaintiff's claims are all barred by Section 230 of the Communications Decency Act. Plaintiff has also failed to plead the required elements of each of his Arkansas law claims. Plaintiff's answering brief (D.I. 20, "AB") only underscores the Complaint's deficiencies.

Meta is immune from suit and liability for all of Plaintiff's claims under Section 230. In his brief, Plaintiff asserts that Meta engaged in first-party expressive conduct as a content provider because its algorithm was used to post the challenged advertisements to users' news feeds. But in his Complaint, Plaintiff alleges that it was third-party advertisers—*not Meta*—who "target[ed] their advertisements as broadly or narrowly as they wish" by paying "to have products and other messages appear in users' news feeds" and "to have their advertisements appear more prominently on users' news feeds." ¶ 9. The Complaint does not plead that Meta materially contributed to the content of the ads, as is required to evade Section 230.

Plaintiff's claims under Arkansas law also suffer from multiple pleading defects. His FBPPA claim fails to allege that Meta had actual knowledge the ads violated the FBPPA or that Meta appropriated his image for its own commercial benefit. The absence of both elements is fatal to the claim. His common law appropriation claim was abrogated by the FBPPA. His false light claim fails to allege actual malice. His unjust enrichment claim fails to allege the receipt of an improper benefit. And he concedes that Count III is simply a list of remedies.

Finally, the Court should reject Plaintiff's request that any dismissal be without prejudice because under binding Third Circuit precedent, Plaintiff was required to provide a draft amended complaint to demonstrate how he could cure the Complaint's defects. He failed to do so.

**ARGUMENT**

**I.     Plaintiff's Claims Are All Barred by Section 230 Immunity.**

As demonstrated in Meta's opening brief, Section 230 provides complete immunity from suit for all of Plaintiff's claims, requiring dismissal of Plaintiff's Complaint in full. OB 6–13. In response, Plaintiff attempts to argue that Meta materially contributed to the challenged ads' content and was itself a content provider, rather than an internet service provider. Plaintiff also asserts that statutory exceptions apply to Section 230 immunity. Neither argument is correct. Section 230 immunity thus bars this action.

**A.     The Complaint Does Not Plausibly Allege That Meta Materially Contributed to the Content of the Challenged Advertisements.**

Plaintiff argues that Section 230 does not apply because the challenged advertisements are Meta's own expressive content rather than content provided by another content provider. AB 6–9. Plaintiff asserts that, by "algorithmically pushing content on Meta's platforms," Meta "transforms a third-party ad into Meta's own expressive conduct." AB 6–7. Plaintiff is wrong.

The Complaint does not allege that Meta contributed—materially or otherwise—to the content of the challenged advertisements. Instead, the Complaint alleges that "Meta allows *its advertisers* to target *their* advertisements as broadly or narrowly as they wish" by, for example, paying Meta "to have products or other messages appear in users' news feeds" or to "appear more prominently on users' news feeds." ¶ 9 (emphases added).

Plaintiff's reliance on the Third Circuit's recent opinion in *Anderson* v. *TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024), is therefore misguided. In *Anderson*, the plaintiff sued TikTok for causing her daughter's death, after third-party videos of the "Blackout Challenge" were recommended to the Plaintiff's daughter on her "For You Page" solely by TikTok's algorithm, which required no "specific user input." *Id.* at 181, 185 n.12. Plaintiff, by contrast, alleges that

2

third-party advertisers could pay to target the ads as narrowly or as broadly as they wished so that their advertisements would appear in users' news feeds or more prominently in those feeds. Unlike in *Anderson*, the challenged advertisements' reach depended on input from third-party advertisers, and were not the creation of Meta's algorithm.[1]

*Forrest* v. *Meta Platforms, Inc.*, 2024 WL 3024642 (N.D. Cal. June 17, 2024) is similarly inapposite. In *Forrest*, Meta was alleged to control the content and appearance of challenged advertisements through automated tools. *Id.* at *5. Here, by contrast, Plaintiff alleges that third-party advertisers created the challenged advertisements and then promoted them to users' news feeds through the use of Meta's algorithm, based on how narrowly or broadly *they* wished to target the advertisements and the amount *they* were willing to pay for the advertisements. ¶¶ 9–10. Crucially, the Complaint contains no allegations that Meta made any contribution to the content for which Plaintiff seeks to hold Meta liable.[2] That distinction is fatal to Plaintiff's claims.

The other cases that Plaintiff relies on are also inapposite. AB 8. The court in *Pace* v. *Baker-White*, 432 F.Supp.3d 495 (E.D. Pa. 2020), held that Section 230 immunity did not apply where defendants, unlike here, created an introductory narrative that allegedly supported the statements that the plaintiff challenged as defamatory. *Id.* at 508. The narrative was a "material contribution to the creation of the allegedly defamatory content," the court reasoned, such that

---

[1] Even assuming the Complaint alleged that Meta, not third-party advertisers, was responsible for ad targeting, that would still not constitute a material contribution. *See, e.g.*, *Dyroff* v. *Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1095, 1098–99 (9th Cir. 2019) (holding that a social website did not "materially contribute" to illicit drug content by "steer[ing] users to . . . groups dedicated to the sale and use of narcotics" or by "sen[ding] users alerts to posts within groups that were dedicated to the sale and use of narcotics"); *Force* v. *Facebook, Inc.*, 934 F.3d 53, 68–71 (2d Cir. 2019) (holding that Facebook did not "materially contribute" to "Hamas's content" by "directing such content to users who are most interested in Hamas and its terrorist activities, without those users necessarily seeking that content").

[2] In any event, Meta believes that *Forrest* was wrongly decided, and sought an interlocutory appeal certification on that basis.

defendants were "responsible for the creation or development of information at the core of this lawsuit." *Id.*

Similarly, in *Kellman* v. *Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022), Section 230 immunity did not apply because Spokeo was "alleged to actively take content from other sources, curate it, and upload it to its site in a novel configuration for repurposed uses." *Id.* at 898. Here, the Complaint does not allege that Meta placed its own editorial spin on any of the challenged advertisements, much less created new content. Instead, the Complaint alleges that the advertisements were promoted via Meta's algorithm—which the third-party advertisers could exploit by paying "to have products or other messages appear in users' news feeds" or to "appear more prominently on users' news feeds." ¶¶ 9–10.

**B. The Complaint Pleads Meta Is an Interactive Computer Service—Not a Content Provider.**

Meta's brief showed that the Complaint pleads that Meta is an "interactive computer service" under Section 230. OB 7 (collecting cases). In response, Plaintiff essentially repeats his defective argument for how Meta "materially contributed" to the challenged advertisements, and argues Meta is a content provider as to its advertising business. AB 9–11. But this argument is belied by the Complaint, which alleges that Meta operates Facebook—a "social media platform[]"on which third-party "advertisers can pay to have products or other messages appear in users' news feeds." ¶¶ 7, 9. The Complaint thus affirmatively pleads that third-party advertisers— not Meta—are the content providers.

Indeed, the Complaint contains no allegation that Meta "provided, created, or developed any portion or content" of the offending advertisements. The absence of such allegations was central to the determination that Meta acted as an internet service provider, and not a content provider in both *Sikhs for Justice "SFJ," Inc.* v. *Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D.

4

Cal. 2015), and *Fed. Agency of News LLC* v. *Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020). Plaintiff's attempt to distinguish those cases falls flat. AB 10.

Finally, Plaintiff's reliance on *Fraley* v. *Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), is misplaced. In *Fraley*, the court held that Facebook was both an internet service provider and a content provider as to claims premised on its "Sponsored Stories" advertisements. *Id.* at 801–02. The court reasoned that Facebook created the Sponsored Stories because, after users interacted with Facebook in certain ways, such as by clicking the "Like" button, Facebook would then take the plaintiffs' names, photos, and likenesses without their consent and use that information to create new content, such as endorsements of the companies plaintiffs "liked." *Id.* at 801. The Complaint alleges nothing of the sort here.

C.   **No Exception under Section 230 Applies to Plaintiff's Claims.**

As Meta showed in its opening brief, Section 230's carveout for "any law pertaining to intellectual property," 47 U.S.C. § 230(e)(2), is inapplicable. OB 10–12. In response, Plaintiff argues that the intellectual property carveout must be read in connection with the next paragraph of the statute, which provides that "[n]o cause of action may be brought[,] and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). He contends that Section 230(e)(2) and (3) together mean that, "as long as [his] state law claims are not inconsistent with Section 230, they must be applied." AB 12. Plaintiff's tortured reading of the statute is unpersuasive.

Distilled to its essence, Plaintiff's argument is that each of Plaintiff's Arkansas law claims are not inconsistent with Section 230 because Section 230 is not applicable. AB 13–14. Plaintiff's argument is circular. If Plaintiff were correct, there would be no need to apply an exception under Section 230. But, as shown above, Section 230 is satisfied because the challenged advertisements' content was allegedly provided by third-party advertisers, not Meta.

5

Plaintiff does not seriously argue that an exception to Section 230 immunity applies to his claims. As to the FBPPA claim, he posits that Section 4-75-1112(b)'s language that the "property rights granted by this subchapter are not considered intellectual property for purposes of [Section 230]" exists to show "that the Broyles Act is separate and apart from Section 230." AB 12. That is not credible. Section 230(e)(2) excepts claims under state intellectual property laws from Section 230 immunity. If the Arkansas legislature had intended the result Plaintiff suggests, then it would have expressly written the opposite—i.e., that the statute was intended to convey intellectual property rights for purposes of Section 230. As to the common law appropriation and false light claims, Plaintiff merely argues that false light claims exist under Arkansas law, and that his appropriation claim has not been abrogated by the FBPAA. But it has been abrogated as shown in Meta's brief and below. As to unjust enrichment, Plaintiff identifies no exception that applies and acknowledges that unjust enrichment claims have been dismissed in the cases Meta cited where asserted against interactive service providers sued for third-party content hosted on their service. AB 14; *see* OB 12.

## II.   Count I Fails to Plead a Plausible Violation of the Frank Broyles Publicity Protection Act Claim.

Plaintiff does not dispute that the FBPPA exempts from liability a service provider, like Meta, of a system or network, who uses a name, photograph, or likeness of an individual, so long as it does not have actual knowledge that a photograph or likeness on the system or network is in violation of the FBPPA. Ark. Code Ann. § 4-75-1110(a)(1)(F). Meta showed that the Complaint fails to plead that Meta had such knowledge, which alone requires dismissal. OB 14.

Instead, Plaintiff argues that Meta knew he "never endorsed marijuana derivatives, Meta knew the advertisements were scams, and yet approved and maintained them." AB 15–16. Stripped of rhetoric, Plaintiff's argument is founded on no more than the conclusory allegations

that Meta "approved" the challenged advertisements, which were hosted on Facebook and were promoted by an algorithm, and that other allegedly false third-party advertisements have been hosted on Facebook in the past. *Id.* But there are no plausible allegations that Meta had actual knowledge that the challenged advertisements violated FBPPA.

Plaintiff also fails to allege that *Meta* used Plaintiff's name, photograph, or likeness for *Meta's* commercial benefit, which is a required element of the claim and its absence independently requires dismissal of Count I. On the contrary, the Complaint alleges that *third-party advertisers* used Plaintiff's name, photograph, and likeness to promote *their* CBD products. ¶¶ 13–20. The only commercial benefit Meta is alleged to have received is revenue it earned as a distributor of the advertisements—irrespective of the content of the advertisement and any alleged appropriation. ¶¶ 8, 52. Any purported use of an algorithm "to decide[] which posts appear at the top of users' newsfeed" does not suggest Meta contributed to the challenged advertisements' content or show that Meta knew the content was violative before it was posted. ¶ 10.

Plaintiff's attempt to distinguish *Stanley* v. *General Media Communications, Inc.*, 149 F. Supp. 2d 701 (W.D. Ark. 2001), misses the mark. The defendant in *Stanley* was a publishing company whose magazine contained the photograph that was the subject of plaintiffs' invasion of privacy-appropriation claim. *Id.* at 704. The court concluded that the publishing company did not appropriate plaintiffs' name and likeness for commercial use because the name and photo was not used to advertise the magazine itself. *Id.* at 706. The same is true here. Plaintiff alleges that third-party advertisers used Plaintiff's name, photograph, and likeness to promote CBD products in ads that appeared *on* Facebook, not ads *for* Facebook. ¶¶ 13–19.

Plaintiff further argues that Meta received benefits from the challenged advertisements in the form of "driving site traffic" and "showcasing [Meta's] engaging advertisements for

7

prospective clients." AB 17.  The Complaint does not allege those purported benefits, and Plaintiff cannot amend his Complaint in his answering brief.  *Frederico* v. *Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007).  Plaintiff also ignores that such benefits exist independently of the advertisements' content, whereas an FBPPA claim necessarily requires the benefits to be conferred *because of* the advertisements' content.  OB 14–15 (citing *Stanley*).

Finally, Plaintiff's attempt to sidestep *Newcombe* v. *Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998), and *Cabaniss* v. *Hipsley*, 151 S.E.2d 496 (Ga. Ct. App. 1966), is unpersuasive. Both cases analyzed appropriation claims using standards analogous to the FBPPA.  *Newcombe*, 157 F.3d at 691; *Cabaniss*, 151 S.E.2d at 506.  The Complaint alleges that Facebook was "merely the conduit through which the advertising" was "transmitted by the [advertiser] to the public." *Cabaniss*, 151 S.E.2d at 506; *see* ¶ 9.  Thus, as in these cases, the "appropriation [complained of] did not inure to [Meta's] benefit, use, or advantage, but to that of [the] advertiser."  *Id.*

### III. Count II Fails to Plead a Plausible Common Law Appropriation Claim under Arkansas Law.

Meta showed that Plaintiff failed to state a common law appropriation claim because the FBPPA abrogated the common law, and because Plaintiff failed to plead that Meta used his name or likeness for its commercial benefit.  OB 15–16.  Plaintiff only addresses Meta's first argument and thus waives any argument that he satisfied the common law pleading standard.

In all events, as Meta explained, the FBPPA is the "exclusive basis for asserting a claim for the unauthorized commercial use of the name, voice, signature, photograph, or likeness of an individual."  Ark. Code Ann. § 4-75-1111(a).  In response, Plaintiff argues that "[i]f Meta's argument is taken as true and there was no commercial benefit related 'to the content of the challenged advertisements and the alleged appropriation of Plaintiff's name and likeness,'" the FBPPA does not apply and Plaintiff "must rely on his common law claims for recovery."  AB 17–

8

18. Plaintiff's circular argument is misguided. As Plaintiff acknowledges, the FBPPA defines "commercial use" as the use of an individual's name or likeness for "*advertising*, selling, or soliciting purchases of products, merchandise, goods, or services." Ark. Code Ann. § 4-75-1103(1)(A)(i) (emphasis added); AB 15. That is the crux of Plaintiff's Complaint. Plaintiff cannot rely on the common law because it has been abrogated and replaced with the FBPPA.

### IV. Count II Fails to Plead a Plausible Common Law False Light Invasion-of-Privacy Claim under Arkansas Law.

Plaintiff does not dispute that to allege an actionable false light claim under Arkansas law he was required to plead plausible factual allegations showing that Meta acted with "actual malice." To do so, he was required to plead facts showing that Meta actually entertained serious doubts as to the challenged advertisements' truth and yet still ran them. *See Dodrill* v. *Ark. Democrat Co.*, 590 S.W.2d 840, 845 (Ark. 1979); OB 17–18. The Complaint makes no such allegation. Rather, Plaintiff alleges no more than the conclusory statements that (i) Meta "approved and maintained" the challenged advertisements; (ii) they were hosted on Facebook between April and June 2024; and (iii) since 2021, news outlets have reported other instances where advertisements allegedly unauthorizedly used media personalities' name, image, and likeness to promote CBD products on Facebook. ¶¶ 24, 38.

### V. Count IV Fails to Plead an Unjust Enrichment Claim under Arkansas Law.

Meta showed that the unjust enrichment claim fails because Meta did not receive any unjust enrichment from the challenged advertisements, only its contracted for advertising services. OB 18–19. In response, Plaintiff contends that the Complaint alleges that Meta received the rights to Plaintiff's "unauthorized name, image, and likeness." AB 19. The Compliant makes no such allegation. Rather, it simply alleges, in conclusory fashion, that the advertising revenues Meta received from the sale of third-party advertisements using Plaintiff's name, photograph, or likeness

9

on Facebook have "unjustly enriched" Meta. ¶ 51. As Plaintiff does not dispute, the revenue Meta is alleged to have received was not contingent on the challenged advertisements' content or the alleged appropriation of Plaintiff's name or likeness. Plaintiff's incorrect assertion in his brief—but not his Complaint—that Meta "solicited" scam ads and "used its algorithm to promote the scam ads" does nothing to buttress the claim. AB 19; *see Frederico*, 507 F.3d at 201–02. The Complaint does not allege that Meta solicited scam ads or used its algorithm to promote such ads. The Complaint instead pleads that third-party advertisers used tools on Facebook to create the ads. ¶¶ 9, 11, 13–19. Plaintiff makes no allegation that the revenue Meta received was dependent on the ads' content. Any revenue was "in accordance with its 'contractual rights,'" so there is no unjust enrichment. *Air Evac EMS, Inc.* v. *USAble Mut. Ins. Co.*, 931 F.3d 647, 655 (8th Cir. 2019).

## VI.   Plaintiff Acknowledges That Count III Does Not State a Separate Claim for Relief.

As Plaintiff now concedes, Count III merely lists certain remedies that Plaintiff seeks. It is not a substantive claim for relief. AB 11 n.1; 20. Because Plaintiff has failed to plead any viable substantive claims, Count III should be dismissed. OB 19–20.

## VII.   Plaintiff's Improper Request for Leave to Amend Should Be Denied.

Plaintiff's request that any dismissal be without prejudice is improper and should be rejected. As the Third Circuit has held, "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp.* v. *Pote Concrete Contr., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). "[F]ailure to submit a draft amended complaint is fatal to a request for leave to amend." *Id.* Plaintiff failed to provide a proposed amended complaint, much less explain how he would attempt to cure the Complaint's deficiencies. AB 4, 20 n.3.

## **CONCLUSION**

The Complaint should be dismissed in its entirety and with prejudice.

|  |  |
|---|---|
| | PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP |
| OF COUNSEL: | By: */s/ Matthew D. Stachel*<br>Matthew D. Stachel (No. 5419) |
| Karen L. Dunn<br>PAUL, WEISS, RIFKIND,<br> WHARTON & GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>Tel.: (202) 223-7300<br>kdunn@paulweiss.com | 1313 N. Market Street, Suite 806<br>Post Office Box 32<br>Wilmington, DE 19899-0032<br>Tel.: (302) 655-4410<br>mstachel@paulweiss.com<br><br>*Attorneys for Defendant Meta Platforms Inc.* |
| Walter F. Brown<br>Meredith R. Dearborn<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Tel.: (628) 432-5100<br>wbrown@paulweiss.com<br>mdearborn@paulweiss.com | |

Dated: October 28, 2024