**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MIKE HUCKABEE,

Plaintiff,

v.

META PLATFORMS, INC.,

Defendant.

Civil Action No. 1:24-cv-00773 (GBW)

**DEFENDANT META PLATFORMS, INC.'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION TO ALTER OR AMEND
<u>UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e)</u>**

OF COUNSEL:

Karen L. Dunn
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
kdunn@paulweiss.com

Walter F. Brown
Meredith R. Dearborn
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100
wbrown@paulweiss.com
mdearborn@paulweiss.com

Dated: January 10, 2025

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
    Matthew D. Stachel (No. 5419)
    1313 N. Market Street, Suite 806
    Post Office Box 32
    Wilmington, DE 19899-0032
    Tel.: (302) 655-4410
    mstachel@paulweiss.com

*Attorneys for Defendant Meta Platforms Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................... 3

ARGUMENT ........................................................................................................ 5

I.      The Motion Should Be Denied Because Plaintiff Has Unduly Delayed. ........... 5

II.     The Motion Should Be Denied Because Amendment Would Be Futile. ............ 7

    A.      Count I Fails to Plead a Plausible Claim for Alleged Violation of the Frank Broyles Publicity Protection Act. ................................................... 7

    B.      Count II Fails to Plead a Plausible Common Law False-Light Invasion of Privacy Claim under Arkansas Law. .................................................... 11

    C.      Count III Fails to Plead a Plausible Common Law Defamation Claim under Arkansas Law. ................................................................................. 13

    D.      Count IV Fails to Plead a Plausible Common Law Negligence Claim under Arkansas Law. ................................................................................. 15

    E.      Count V Fails to Plead a Plausible Common Law Unjust Enrichment Claim under Arkansas Law. ..................................................................... 17

    F.      Plaintiff's Proposed Amended Complaint Would Be Futile Because Section 230 Bars All of Plaintiff's Claims. ............................................... 18

III.    The Motion Should Be Denied as to Claims Plaintiff Does Not Seek to Amend. ............ 20

CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.P.* v. *William Jewell Coll.*,
  2021 WL 5514013 (W.D. Mo. Feb. 4, 2021) ...........................................................................9

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004)..............................................................................................5, 6

*In re Aetna, Inc. Sec. Litig.*,
  2009 WL 1619636 (E.D. Pa. June 9, 2009)...........................................................................9

*Air Evac EMS, Inc.* v. *USAble Mut. Ins. Co.*,
  931 F.3d 647 (8th Cir. 2019) ...............................................................................................17

*Anderson* v. *TikTok, Inc.*,
  116 F.4th 180 (3d Cir. 2024) ...................................................................................3, 18, 19

*Antenucci* v. *Vincent*,
  2003 WL 288967 (S.D. Iowa Feb. 6, 2003)...........................................................................8

*Burtch* v. *Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)..............................................................................................5, 7

*Cabaniss* v. *Hipsley*,
  151 S.E.2d 496 (Ga. Ct. App. 1966) ...................................................................................11

*Cornette* v. *Graver*,
  2020 WL 1643370 (W.D. Pa. Apr. 2, 2020)........................................................................10

*Day* v. *Case Credit Corp.*,
  2007 WL 604636 (E.D. Ark. Feb. 22, 2007) .......................................................................17

*Dodrill* v. *Arkansas Democrat Co.*,
  590 S.W.2d 840 (Ark. 1979).................................................................................12, 13, 16

*Duggar* v. *City of Springdale*,
  599 S.W.3d 672 (Ark. Ct. App. 2020) .................................................................................12

*Faulkner* v. *Arkansas Children's Hosp.*,
  69 S.W.3d 393 (Ark. 2002)..................................................................................................14

*Forrest* v. *Meta Platforms, Inc.*,
  2024 WL 3024642 (N.D. Cal. June 17, 2024) .......................................................................7

*Forrest* v. *Wetzel*,
    2022 WL 4387864 (M.D. Pa. Sep. 22, 2022) ...........................................................9

*Hobbs* v. *Pasdar*,
    682 F. Supp. 2d 909 (E.D. Ark. 2009) ...........................................................12, 15

*Jang* v. *Boston Scientific Scimed, Inc.*,
    729 F.3d 357 (3d Cir. 2013)...........................................................5, 6

*Kolbek* v. *Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ...........................................14

*Kool, Mann, Coffee & Co.* v. *Coffey*,
    300 F.3d 340 (3d Cir. 2002)...........................................................20

*Kroger Co.* v. *Smith*,
    218 S.W.3d 359 (Ark. Ct. App. 2005) ...........................................16

*Newcombe* v. *Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ...........................................................11

*Robertson* v. *Daniel*,
    2013 WL 840805 (Ark. App. Mar. 6, 2013) ...........................................14

*Sims* v. *Little Rock Plastic Surgery, P.A.*,
    2020 WL 4514572 (E.D. Ark. Aug. 5, 2020) ...........................................14

*Sparks Reg'l Med. Ctr.* v. *Blatt*,
    935 S.W.2d 304 (Ark. 1996)...........................................................18

*Thomson Newspaper Pub., Inc.* v. *Coody*,
    896 S.W.2d 897 (Ark. 1995)...........................................................13, 17

*Trickett* v. *Spann*,
    613 S.W.3d 773 (Ark. Ct. App. 2020) ...........................................17

*Van Horn, Metz & Co.* v. *JPMorgan Chase & Co.*,
    2024 WL 1142872 (E.D. Pa. Mar. 15, 2024)...........................................8

*Webster* v. *Webster*,
    689 S.W.3d 133 (Ark. 2024)...........................................................13, 14

*Werner* v. *Werner*,
    267 F.3d 288 (3d. Cir. 2001)...........................................................5

*Yanmar Co.* v. *Slater*,
    386 S.W.3d 439 (2012)...........................................................15

*Yeager* v. *KUAF 91.3 NPR Public Radio*,
    2020 WL 2449348 (W.D. Ark. May 12, 2020) ....................................................................16

*Yon* v. *Reeves*,
    2022 WL 16639326 (W.D. Ark. Nov. 2, 2022).................................................................14

**Statutes**

Ark. Code Ann. § 4-75-1108 .....................................................................................................7

Ark. Code Ann. § 4-75-1110 .....................................................................................................7

Ark. Code Ann. § 4-75-1112 ...................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 15.................................................................................................................4, 5

## NATURE AND STAGE OF PROCEEDINGS

Defendant Meta Platforms Inc. ("Meta") respectfully submits this answering brief in opposition to Plaintiff Mike Huckabee's ("Plaintiff") motion to alter or amend under Rule 59(e) to allow him to file an amended complaint (D.I. 26, the "Motion").

## SUMMARY OF ARGUMENT

On November 18, 2024, this Court issued a thorough Memorandum Opinion (D.I. 24, the "Opinion"), which dismissed with prejudice Plaintiff's original complaint (D.I. 1, the "Original Complaint") in its entirety for failure to state a claim upon which relief could be granted. Before the Court's ruling, Plaintiff had ample opportunity to present his claims in the Original Complaint and to amend those claims in response to Meta's motion to dismiss. At no time did Plaintiff seek to bolster his claims with additional allegations, nor did Plaintiff even submit a proposed amended complaint in connection with his bare request in his answering brief that any dismissal be with leave to replead (as he was required to do in the Third Circuit). Plaintiff now seeks relief from the dismissal with prejudice to permit him to file an amended complaint, pursuant to Rules 59(e) and 15. But Plaintiff's belated request is deficient, and his Motion should be denied.

*First*, Plaintiff unduly delayed in seeking to amend his complaint. Plaintiff fails to offer any legitimate reason why he could not have amended his Original Complaint to add his new allegations before it was dismissed with prejudice. All of the facts newly alleged in the proposed amended complaint were available to Plaintiff at the time Meta filed its motion to dismiss, and certainly before this Court dismissed the Original Complaint. Plaintiff's sole argument is that he needed the benefit of this Court's Opinion to know what was deficient in the Original Complaint. That is simply incorrect because Plaintiff had the benefit of Meta's opening brief, which clearly detailed the very deficiencies the Court identified in granting the motion to dismiss. The Third Circuit has previously rejected Plaintiff's "wait and see" approach to pleading. Moreover, this

argument does not explain Plaintiff's attempt to plead two *entirely new* causes of action under Arkansas law for alleged defamation and negligence. There is simply no reason those claims could not have been asserted before the Court granted the motion to dismiss.

*Second*, any amendment would be futile because Plaintiff's proposed amended complaint still fails to plead the elements under Arkansas law of all of the claims it purports to assert. Count I fails to plead a violation of the Frank Broyles Publicity Protection Act ("FBPPA") because Plaintiff does not allege that Meta acted with scienter or made commercial use of Plaintiff's name, image, or likeness. Count II fails to plead a plausible claim for false-light invasion of privacy under Arkansas law because Plaintiff does not allege facts permitting the inference that Meta acted with actual malice. Count III fails to plead a plausible claim for defamation under Arkansas law because Plaintiff does not allege facts permitting the inference that his reputation suffered actual damage and because Plaintiff does not plead facts suggesting that Meta acted with actual malice. Count IV fails to plead a plausible claim under Arkansas common law for negligence because Plaintiff does not allege any legal duty that Meta owed to Plaintiff. Count IV further fails to state a claim because allowing Plaintiff to plead a negligence claim would end-run the federal constitutional and Arkansas law protections that prevent public figures like Plaintiff from bringing claims for defamatory statements absent actual malice. And Count V for unjust enrichment fails to state a claim under Arkansas law because Meta did not receive an unlawful benefit that it is bound by equity and good conscience to return.

In addition, the proposed amended complaint remains futile for the independent reason that Section 230 of the Communications Decency Act provides immunity to Meta. Meta recognizes that the Court reasoned Section 230 immunity was not pleaded by the allegations in the Original Complaint. Upon a close read of the allegations in the proposed amended complaint and the Third

Circuit's opinion in *Anderson* v. *TikTok, Inc.*, 116 F.4th 180, 183 (3d Cir. 2024), however, Meta submits that the proposed amended complaint demonstrates, on its face, that Meta is immune from liability. Plaintiff's proposed amended claims are premised on the allegedly unlawful *content* of the alleged offending third-party ads and Meta's role in merely *hosting* them. They do not seek to hold Meta liable for its algorithm's role in *promoting* the ads. *Anderson* found that Tik Tok's algorithm's *promotion* of the Blackout Challenge to teenage users was Tik Tok's "own expressive activity" that was "not contingent upon any specific user input," and thus is inapposite. Indeed, far from seeking to hold Meta liable for promotion of the challenged ads, Plaintiff's proposed amended complaint now admits that Meta had policies and procedures in place to prevent and mitigate false advertisements by third parties.

*Finally*, Plaintiff's Motion should be denied as to Plaintiff's Arkansas common law claim for appropriation-based invasion of privacy and his "claim" for declaratory and injunctive relief. This Court dismissed these two claims with prejudice, and Plaintiff does not seek to replead them, effectively conceding that they were properly dismissed.

## STATEMENT OF RELEVANT FACTS

Plaintiff filed the now-dismissed Original Complaint on July 1, 2024, alleging that unidentified third parties used Plaintiff's name, photograph, and likeness in unauthorized advertisements they created to promote their CBD products, which made false claims about Plaintiff and falsely attributed certain statements to him. D.I. 1. at ¶¶ 1, 13–19. Plaintiff alleged that Meta "approved and maintained [the challenged] advertisements that unauthorizedly used and exploited Plaintiff's name, photograph, and likeness" by "hosting" them on Facebook. *Id.* at ¶¶ 23–24; *see also id.* at ¶¶ 32–34, 38, 41–43, 46–47. But Plaintiff pleaded no facts suggesting that Meta knew the challenged advertisements were false before they were posted or that Meta had any involvement in creating the ads or determining their content.

3

On September 5, 2024, Meta moved to dismiss Plaintiff's complaint. Meta detailed, at length, the Original Complaint's deficiencies. D.I. 17–18. Rather than amending his complaint as a matter of course, *see* Fed. R. Civ. P. 15(a)(1)(B), Plaintiff instead filed an answering brief, D.I. 20. In his brief, Plaintiff made a cursory request that any dismissal "be without prejudice, if at all." D.I. 20 at 20 n.3. But Plaintiff did not submit a proposed amended complaint with his answering brief, as required in the Third Circuit, or otherwise explain how he would intend to bolster his claims.

On November 18, 2024, this Court granted Meta's motion, dismissing the complaint in its entirety and with prejudice. Dismissal with prejudice was warranted, the Court explained, because it "d[id] 'not have any reason to believe that amendment would cure the identified defects,'" and also because Plaintiff "'never submitted a draft amended complaint.'" Opinion at 15 n.1.

On December 16, 2024, Plaintiff filed the Motion, belatedly attaching a redline showing revisions that Plaintiff would include in a proposed amended complaint. D.I. 26, Ex. 1. The proposed amended complaint, like the Original Complaint, seeks to hold Meta liable for ads created by third parties that ran on Facebook. Although Plaintiff added alleged details regarding Meta's advertising tools, its ad review standards, and other instances of Meta's purported unauthorized use of public figures' images and likenesses to promote CBD products, these newly asserted allegations merely expand upon the very same facts that were alleged in the Original Complaint, and which this Court already found to be deficient. The proposed amended complaint also omits Plaintiff's previously asserted and now-dismissed claims for (i) invasion of privacy – appropriation and (ii) declaratory and injunctive relief, and instead asserts entirely new causes of action for defamation and negligence under Arkansas law.

**ARGUMENT**

Where a court considers a Rule 15(a) motion for leave to amend a complaint in conjunction with a Rule 59(e) motion to alter or amend, the Third Circuit has explained that it is appropriate to "consider the motions together and determine what outcome is permitted by consideration of the Rule 15(a) factors." *Burtch* v. *Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011). Thus, "where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors," including "undue delay, bad faith, prejudice, or futility." *Id*. at 230–31. However, "[t]he liberal standard announced in [Rule] 15(a) becomes less flexible after a final judgment is entered." *Werner* v. *Werner*, 267 F.3d 288, 296 (3d. Cir. 2001). A district court is vested with considerable discretion in deciding a post-dismissal motion to amend a complaint. *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280–81 (3d Cir. 2004).

Here, Plaintiff's Motion should be denied because he has unduly delayed in moving to amend and his proposed amendments would be futile. In addition, the Motion should be denied as to the two now-dismissed claims that Plaintiff has not sought to replead.

**I.      The Motion Should Be Denied Because Plaintiff Has Unduly Delayed.**

Plaintiff offers no legitimate reason why he could not have either amended the Original Complaint as a matter of course within 21 days of Meta filing its motion to dismiss, *see* Fed. R. Civ. P. 15(a)(1)(B), or sought leave to amend the Original Complaint thereafter but before the Court granted Meta's motion to dismiss, *see* Fed. R. Civ. P. 15(a)(2). In the Third Circuit, "[t]he concept of 'undue delay' includes consideration of whether new information came to light or was available earlier to the moving party." *Adams Golf*, 381 F.3d at 280. Delay may become undue "'when a movant has had previous opportunities to amend a complaint' but instead 'delays making a motion to amend until after [judgment] has been granted to the adverse party.'" *Jang* v. *Boston Scientific Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013).

Plaintiff's only argument is that he could not have known which portions of his Original Complaint were deficient without the benefit of this Court's Opinion. Motion at 7. But Plaintiff's argument lacks merit because the Third Circuit has criticized this "wait-and-see" approach. In *Jang*, the Third Circuit held that the district court's denial of a motion under Rules 59(e) and 15 was not an abuse of discretion where, as here, the plaintiff's "only explanation is that 'it was early in the case, the pleadings had not previously been tested, and so [plaintiff] clarified [the contract claim] in his briefs, indicated his willingness to amend the Complaint if necessary, and then waited for the District Court to rule.'" *Jang*, 729 F.3d at 368. Meta's opening brief in support of its motion to dismiss identified the deficiencies in Plaintiff's complaint, but Plaintiff did not request leave to amend in response to the motion or in connection with filing his answering brief. Nor did Plaintiff seek leave to amend after evaluating Meta's response to Plaintiff's arguments in its reply brief.

Plaintiff thus was free to introduce the newly added allegations and claims long before the Court granted Meta's motion to dismiss, and there is no reason why he could not have included both the additional allegations and the two new claims for alleged defamation and negligence in the Original Complaint. *Adams Golf* is instructive. In that case, the Third Circuit affirmed the district court's denial of a motion under Rules 59(e) and 15. Among other things, the district court had found that the plaintiffs had unduly delayed because they "could have introduced the allegations in the motion to amend long before the Court granted the motion to dismiss, and indeed could have included them in their original complaint." *Adams Golf*, 381 F.3d at 280.

Indeed, Plaintiff's argument that he needed the benefit of this Court's Opinion cannot excuse his attempt to plead *entirely new* claims for alleged defamation and negligence in the proposed amended complaint. Because those claims were not alleged in the Original Complaint,

they were not the subject of the motion to dismiss or the Court's Opinion.  There is no justification for Plaintiff's delay in seeking to assert these claims.  Plaintiff's admission that he based these claims on the decision in *Forrest* v. *Meta Platforms, Inc.*, 2024 WL 3024642 (N.D. Cal. June 17, 2024)[1]—a case that considered claims under California law, not Arkansas law—demonstrates his undue delay.  *Forrest* was decided on June 17, 2024, *before* Plaintiff filed his Original Complaint.

## II.    The Motion Should Be Denied Because Amendment Would Be Futile.

Plaintiff's belated request to file an amended complaint should also be denied because the newly added allegations and causes of action do not state plausible claims for relief under the same standard of legal sufficiency as applies to a motion under Rule 12(b)(6) and so the amendment would be futile.  *See Burtch*, 662 F.3d at 231 (affirming denial of motion under Rules 59(e) and 15 where the proposed amendment would be futile because "the complaint, as amended, would fail to state a claim upon which relief could be granted").

### A.    Count I Fails to Plead a Plausible Claim for Alleged Violation of the Frank Broyles Publicity Protection Act.

This Court's Opinion dismissed Plaintiff's FBPPA claim, reasoning that Plaintiff's allegations failed to plead facts permitting an inference that Meta acted with the requisite scienter, namely "actual knowledge or awareness of facts or circumstances that could give rise to actual knowledge."  Opinion at 10; Ark. Code Ann. § 4-75-1108, § 4-75-1110(a)(1)(F) (requiring "actual knowledge" or knowledge "of facts or circumstances from which a violation of this subchapter is apparent").  In particular, this Court held the following allegations did not support a reasonable inference that Meta had the requisite scienter: "Meta approved and maintained these advertisements with actual malice or, at least, with reckless disregard to their truthfulness or

---

[1]    Meta believes that *Forrest* is inapposite here and was also wrongly decided, and sought an interlocutory appeal certification on that basis.

accuracy," and, "Meta sells advertisements, Meta uses its algorithm to popularize those advertisements, Plaintiff is a nationally recognized celebrity, Meta hosted a fake 'FoxNews.com' link, Meta approved these scams, and Meta has been approving these scams for other celebrities since at least 2021."  Opinion at 10.

Plaintiff now disputes this holding, arguing that allegations that Meta has a policy of reviewing advertisements prior to their publication, and knew of other allegedly false advertisements involving other public figures are sufficient to show that Meta acted with actual knowledge when it published the ads at issue here.  However, these allegations still fail to plead scienter, a required element of an FBPPA claim.  And Plaintiff still fails to plead that Meta made commercial use of his image, name, or likeness.

*First*, Plaintiff's new allegations do not plead facts sufficient to permit a plausible inference of scienter: namely, that Meta had *actual knowledge* that the challenged advertisements were fraudulent, or was actually aware of facts and circumstances from which a violation of the FBPPA was apparent.  *See* Opinion at 10.  Instead, at most, Plaintiff attempts to allege that Meta *should have known* the ads were in violation of the FBPPA because (i) Meta reviews advertisements and (ii) public figures other than Plaintiff were the subject of other allegedly fraudulent ads.  Motion at 3; D.I. 26, Ex. 1 at ¶ 38.  As a matter of law, these allegations are insufficient.  *See Van Horn, Metz & Co.* v. *JPMorgan Chase & Co.*, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024) ("[T]he assertions in the Complaint do not plausibly allege actual knowledge; rather, they amount to allegations Defendant 'should have known.'") (evaluating actual knowledge in context of an aiding and abetting fraud claim); *Antenucci* v. *Vincent*, 2003 WL 288967, at *6 (S.D. Iowa Feb. 6, 2003) ("What defendants 'should have known' is not the governing standard; circumstantial evidence of this kind must permit an inference of 'actual knowledge.'") (evaluating actual knowledge in

context of 42 U.S.C. § 1983); *In re Aetna, Inc. Sec. Litig.*, 2009 WL 1619636, at *26 (E.D. Pa. June 9, 2009) (holding an assertion that defendants should have known or could have known is not an assertion of actual knowledge) (evaluating actual knowledge in the context of a securities fraud claim); *A.P.* v. *William Jewell Coll.*, 2021 WL 5514013, at *4 (W.D. Mo. Feb. 4, 2021) ("Actual knowledge cannot be demonstrated through a constructive 'should have known' standard.") (evaluating actual knowledge in context of a Title IX claim); *Forrest* v. *Wetzel*, 2022 WL 4387864, at *7 (M.D. Pa. Sep. 22, 2022) ("[A]fter the fact knowledge is not considered actual knowledge.") (evaluating actual knowledge in context of an Eighth Amendment claim).

Moreover, Plaintiff's new allegations do not, as a matter of law, even establish that Meta "should have known" of the alleged unlawful use of Plaintiff's name and image—much less that Meta actually knew of such use. Instead, Plaintiff's new allegations are consistent with the fact that unidentified third parties have sought to use Meta's ad tools to disseminate false content, which Meta is forced to combat. Indeed, the fact that Meta has enacted policies and procedures designed to prevent or mitigate scam advertisements, as Plaintiff affirmatively acknowledges, *negates* a finding of scienter because it shows that Meta has taken steps to thwart those third parties. D.I. 26 Ex. 1 at ¶¶ 38C–D, 66. Plaintiff acknowledges that Meta has adopted Advertising and Community Standards that prohibit potential privacy violations, inaccurate information, and ads that are not "authentic," and that "Meta has developed and implemented both automated and manual review systems" to determine whether ads violate these standards. *Id.* at ¶ 38C. And Plaintiff does not dispute that the challenged advertisements involving him ran for a period of less than two months (D.I. 26 Ex. 1 at ¶ 20), nor does he allege that such advertisements are continuing to be published on Facebook.

*Second*, Plaintiff does not allege facts that permit a plausible inference that Meta made commercial use of his image, name, or likeness, a required element of the FBPPA. The proposed amended complaint alleges that "Meta's advertising business produces ads using basic material supplied" by third-party scammers, not Meta, to its automated Ads Manager application. D.I. 26 Ex. 1 at ¶ 38A. Meta's Ads Manager application, Plaintiff alleges, "controls every aspect of the production of each ad" and "provides Meta with ample opportunities to detect ads that are fraudulent or that misappropriate" names, images, or likenesses. D.I. 26 Ex. 1 at ¶ 38B. In an attempt to manufacture "commercial use," Plaintiff misconstrues the Opinion, which he contends held that "the scam ads were Meta's own first-party speech and Meta was responsible for the violative ads." Motion at 3. However, the Court concluded only that Plaintiff alleged that Meta's first-party speech *encompassed its algorithm* that (i) "predict[ed] what content will keep and attract users," and, (ii) "decide[d] which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements." Opinion at 7. Plaintiff's claims, on the other hand, concern the *content* of the allegedly infringing ads, and the algorithm is not alleged to have any bearing on that content. The allegedly infringing ads were not held to be Meta's first-party speech.

Absent a showing that Meta took any action with respect to Plaintiff's image, there can be no commercial use in the context of a right to publicity statute like the FBPPA. *See Cornette* v. *Graver*, 2020 WL 1643370, at *11 (W.D. Pa. Apr. 2, 2020) (holding, in evaluating a similar right of publicity statute, that commercial use requires the defendants to have "employed [plaintiff's] likeness or made use or taken advantage of it"). Plaintiff alleges only that Meta provided a platform for advertisers and hosted the advertisements at issue. *See id.* at *11 (holding that allegations that the defendants "provide[d] e-commerce services for merchants, hosted [the

violative content], and provided certain services in connection with hosting [the violative content]"
were insufficient to demonstrate commercial use).

Notably, Plaintiff does not—and cannot—allege that Meta itself created, developed, or
contributed to the content of the challenged advertisements. To the contrary, the proposed
amended complaint alleges that the challenged advertisements were created by third parties who
used them to promote their CBD products. D.I. 26 Ex. 1 at ¶ 38A, C. That is not sufficient to
allege commercial use of Plaintiff's name and likeness *by Meta*. And the fact that Meta received
revenue from the challenged advertisements does not qualify as commercial use. *See Newcombe*
v. *Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir. 1998) ("[U]se of [plaintiff's] likeness" did not
"directly benefit[] [defendant magazine publishers] because the benefit they received—payment
for the advertising space—was unrelated to the contents of the advertisement"); *Cabaniss* v.
*Hipsley*, 151 S.E.2d 496, 506 (Ga. Ct. App. 1966) (where publisher was "merely the conduit
through which the advertising and publicity matter of customers was transmitted by [the third-
party advertiser] to the public," reasoning that a publisher's participation "was merely passive"
and any appropriation "did not inure to [the publisher's] benefit, use or advantage, but to that of
his advertiser").

**B.    Count II Fails to Plead a Plausible Common Law False-Light Invasion of
Privacy Claim under Arkansas Law.**

This Court's Opinion dismissed Plaintiff's originally pleaded false-light invasion of
privacy claim, holding that Plaintiff failed to allege actual malice by Meta, as required under
Arkansas common law. Plaintiff now attempts to replead this claim, arguing that "there is no other
conclusion to draw but that Meta entertained serious doubts as to the truth of its publication," for
the same reasons that this Court already rejected. *See* Motion at 5; Opinion at 11–12. This Court
previously found allegations that Meta (i) reviewed and approved the challenged third-party ads,

and (ii) had experienced issues with similar ads being posted concerning other public figures insufficient to plead actual malice. Opinion at 12. The proposed amended complaint does not plead anything new.

In addition to showing "the false light in which [the plaintiff] was placed by the publicity would be highly offensive to a reasonable person," a plaintiff must establish actual malice by the defendant. *Dodrill* v. *Arkansas Democrat Co.*, 590 S.W.2d 840, 845 (Ark. 1979). Actual malice cannot be satisfied by "mere negligence," but rather, requires showing "the Defendant, in fact, entertained serious doubts as to the truth of his publication." *Id*. "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Hobbs* v. *Pasdar*, 682 F. Supp. 2d 909, 930 (E.D. Ark. 2009) (quotation and citation omitted).

Plaintiff's proposed amended complaint fails to assert Meta knew the challenged advertisements were false or had serious doubts about the truth of the advertisements. Rather, Plaintiff pleads additional inconsequential details, including that Meta reviews advertisements as a matter of policy and that other public figures "have had their names, images, and likenesses used to promote CBD products without their knowledge and consent," to support his original allegations and, in a conclusory fashion, asserts that Meta entertained serious doubts as to the truth of its publication of the specific challenged advertisements about him. D.I. 26 Ex. 1 at ¶ 38F, H. None of the additional facts alleged, however, permit the inference that Meta actually entertained doubts about the truthfulness of the advertisements at issue before they were published, as is required to plead actual malice. *See Hobbs* v. *Pasdar*, 682 F. Supp. 2d 909, 931–32 (E.D. Ark. 2009) (holding, on a summary judgment motion, that plaintiff failed to establish actual malice because there was no evidence the "defendants made the statements at issue with knowledge that the statements were false or with reckless disregard of whether the statements were false or not."); *Duggar* v. *City of*

*Springdale*, 599 S.W.3d 672, 685 (Ark. Ct. App. 2020) (dismissing a false-light invasion of privacy claim where the plaintiff did not assert that the defendants knew the information was false or had serious doubts about the truth of the information). Rather, as discussed above, Plaintiff's new allegations show that Meta has enacted policies and procedures designed to prevent or mitigate scam advertisements. D.I. 26 Ex. 1 at ¶¶ 38C–D, 66. This is the opposite of actual malice.

## C. Count III Fails to Plead a Plausible Common Law Defamation Claim under Arkansas Law.

To state a common law claim for defamation under Arkansas law, a plaintiff must plead: (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Webster* v. *Webster*, 689 S.W.3d 133, 136 (Ark. 2024). When the allegedly defamatory statements involve a public figure, as Plaintiff admits he is, the First Amendment to the United States Constitution protects a publisher from liability for purportedly defamatory statements unless the plaintiff pleads that the statements were made with actual malice. *Dodrill*, 590 S.W.2d at 842–44 (contrasting defamation claim by public figure with that by a private individual as to whom a negligence standard applies). To plead actual malice, a plaintiff must allege facts permitting the inference that the statements were made with knowledge that they were false or with reckless disregard of whether the statements were false or not. *Thomson Newspaper Pub., Inc.* v. *Coody*, 896 S.W.2d 897, 901 (Ark. 1995) (citing *Harte–Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657 (1989)). Plaintiff's proposed amended complaint fails to plead facts sufficient to support a common law defamation claim.

*First*, Plaintiff fails to demonstrate how the statements at issue harmed his reputation. Under Arkansas law, actual damage is an element of defamation and, because Arkansas no longer recognizes the doctrine of defamation per se, which presumed damage to reputation, a plaintiff

must plead specific facts demonstrating that he has suffered actual damage to his reputation. *Faulkner* v. *Arkansas Children's Hosp.*, 69 S.W.3d 393, 404 (Ark. 2002).

The proposed amended complaint does not contain specific details showing *how* Plaintiff's reputation was actually damaged. *See Webster*, 689 S.W.3d at 137 (finding failure to plead actual damage absent specific facts about the damage to plaintiff's reputation); *Robertson* v. *Daniel*, 2013 WL 840805, at *6 (Ark. App. Mar. 6, 2013) (holding allegations that plaintiff was "cast as untruthful and not [] trusted to serve" were not specific enough to demonstrate actual damage to his reputation or profession); *Yon* v. *Reeves*, 2022 WL 16639326, at *5 (W.D. Ark. Nov. 2, 2022) (same). Plaintiff alleges that he experienced anxiety and stress because he feared that others might believe that he endorsed marijuana-derived products or was too sick to continue his television show, speeches, or appearances. *See* D.I. 26 Ex. 1 at ¶ 41. But allegations of mental anguish alone do not show actual reputational harm as required to state a claim for common law defamation. *See Kolbek* v. *Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *19 (W.D. Ark. Dec. 24, 2013) (reasoning that "evidence of mental anguish, in the absence of proof of an actual reputational injury, cannot support an award of damages in a defamation action") (quotation and citation omitted).

Plaintiff does not allege that the reputational harm from the advertisements at issue resulted in forfeiture of his hosting position on Trinity Broadcasting Network, or that he missed out on future speaking engagements, endorsements, or other contracts as a result of the advertisements at issue. *See Sims* v. *Little Rock Plastic Surgery, P.A.*, 2020 WL 4514572, at *5 (E.D. Ark. Aug. 5, 2020) (holding plaintiff pleaded sufficient facts to demonstrate actual damage because plaintiff alleged that the defamatory statements actually "resulted in 'a sharp decline in business'").

To the contrary, the proposed amended complaint pleads facts suggesting that Plaintiff has suffered no actual reputational harm. After the November 2024 presidential election (and well after the alleged false statements at issue in this case), Plaintiff alleges that "President-Elect Donald J. Trump has chosen Plaintiff to serve as U.S. Ambassador to Israel." D.I. 26, Ex. 1 at ¶ 2. Plaintiff's selection for such a prestigious position strongly implies that his reputation suffered no damage from the allegedly false CBD ads created by third parties.

*Second*, Plaintiff also failed to plead that the allegedly defamatory statements were made by Meta with actual malice. Courts in the Third Circuit perform the same analysis for false light and defamation, as it relates to the required element of actual malice. *See Hobbs*, 682 F. Supp. 2d at 925–32. Accordingly, for the reasons discussed above, Plaintiff has failed to plead actual malice by Meta.

### D. Count IV Fails to Plead a Plausible Common Law Negligence Claim under Arkansas Law.

To state a claim for negligence under Arkansas law, a plaintiff must plead "[1] that the defendant owed a duty to the plaintiff, [2] that the defendant breached that duty, and [3] that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co.* v. *Slater*, 386 S.W.3d 439, 449 (2012). Plaintiff's proposed amended complaint fails to state a claim because (i) Arkansas law does not recognize any duty owed by Meta to Plaintiff and (ii) because Plaintiff admits he is a public figure, this claim would constitute an end run around United States First Amendment requirements that Plaintiff demonstrate actual malice.

*First*, Plaintiff has failed to plead a legal duty owed by Meta. Plaintiff asserts that Meta "owed a duty to Plaintiff to operate its advertising business in a commercially reasonable manner," which it breached by "violating its own standards and failing to warn Huckabee of the CBD ads that featured his name, image, and likeness, and failing to ask his permission to publish the

ad." Motion at 6. But Plaintiff's proposed amendment identifies no statute or other Arkansas law

creating such a duty of care. On the contrary, at least one court has rejected an attempt to allege a

generalized duty of professional negligence to safeguard another's reputation as inconsistent with

Arkansas law. *See Yeager* v. *KUAF 91.3 NPR Public Radio*, 2020 WL 2449348, at *5 (W.D. Ark.

May 12, 2020).

Plaintiff's assertion that Meta's own internal Advertising and Community Standards

created this purported legal duty has also been roundly rejected by Arkansas courts. D.I. 26, Ex.

1 at ¶ 66. *Kroger Co.* v. *Smith*, 218 S.W.3d 359, 362–63 (Ark. Ct. App. 2005), is instructive.

Building on ample Arkansas case law, the court held that a store's policy of maintaining a service

assisting customers with carrying groceries "d[id] not translate into a legal duty" to provide that

service, such that the failure to do so would constitute negligence. *Id.* at 363. It accordingly

reversed so that the trial court could enter a directed verdict on the store's behalf. *Id.*

*Second*, Plaintiff concedes in his Motion that he "is a public figure," which required him

to plead actual malice to assert his proposed common law claim under Arkansas law for

defamation. Motion at 4–5. By attempting to plead a common law claim for negligence, Plaintiff

is thus effectively seeking to end-run both the federal constitutional requirements and settled

Arkansas law that he be required to plead that Meta acted with actual malice. *See Dodrill*, 590

S.W.2d at 844 (holding that "in the case of a *private individual*, the negligence standard shall

measure the publisher's liability in libel actions. The publisher of a libelous article shall be liable

to the defamed *private individual* for failure to exercise ordinary care prior to publication to

determine the defamatory potential of its statements") (emphases added). As the Arkansas

Supreme Court recognized in *Coody*, on which Plaintiff relies, "'[a] public figure may not recover

damages for a defamatory falsehood without clear and convincing proof that the false 'statement

was made with 'actual malice.'" *Coody*, 896 S.W.2d at 901 (citations omitted).  Plaintiff should

thus not be permitted to assert a common law claim for negligence in his bid to obtain the benefits

of the negligence standard that Arkansas law and federal constitutional requirements apply only to

claims by private individuals.

### E.    Count V Fails to Plead a Plausible Common Law Unjust Enrichment Claim under Arkansas Law.

The Opinion dismissed Plaintiff's original unjust enrichment claim, reasoning that Plaintiff

"failed to make any allegations that allow the reasonable inference that Meta had any 'fault'" and

thus had no legal right to retain the remuneration it received for hosting the allegedly fraudulent

ads.  Opinion at 13.  Plaintiff does not add any factual allegations that permit a reasonable inference

that Meta had any "fault," so Plaintiff resorts to disputing the legal basis of the Court's holding,

arguing that "even an innocent defendant is subject to an unjust enrichment claim brought by a

more deserving party."  Motion at 6.  This attempt falls flat.

Under Arkansas law, "[t]o find unjust enrichment, a party must have received something

of value, to which he or she is not entitled and which he or she must restore."  *Air Evac EMS, Inc.*

v. *USAble Mut. Ins. Co.*, 931 F.3d 647, 655 (8th Cir. 2019) (citing *Campbell* v. *Asbury Auto., Inc.*,

381 S.W.3d 21, 36 (Ark. 2011)).  "[E]quity does not prohibit enrichment alone—the enrichment

must have come about from unjust events or motives."  *Day* v. *Case Credit Corp.*, 2007 WL

604636, at *3 (E.D. Ark. Feb. 22, 2007).

In support of his proposed amended claim, Plaintiff relies on *Trickett* v. *Spann*, 613 S.W.3d

773 (Ark. Ct. App. 2020), but that case is readily distinguishable.  In *Trickett*, the defendants

funded the construction of a home on real property titled in the plaintiff's name.  *Id.* at 776.  In

finding that the plaintiff was unjustly enriched, the court held that the funds provided to pay for

improvements on the property were not gifts because the defendants expected to be reimbursed for

the house that was built on plaintiff's property. *Id*. at 779. Contrary to Plaintiff's characterization, the defendants in *Trickett* were not considered the "more deserving party;" rather, the plaintiff in *Trickett* was unjustly enriched at the expense of the defendants precisely because he received from them the benefit of the construction of a home on his property for which defendants expected to be compensated.

Here, Plaintiff is not the "more deserving party," nor has he alleged any facts that would support the inference that he is more deserving of payment than Meta. Plaintiff's proposed amendments still fail to allege facts that would support a reasonable inference of fault by Meta that would result in it being unjustly enriched. *See Sparks Reg'l Med. Ctr.* v. *Blatt*, 935 S.W.2d 304, 308 (Ark. 1996) (holding, in a case where the plaintiff had no reasonable expectation of payment from the defendant, the defendant could not "be considered at fault" where the defendant did not intervene).

**F.    Plaintiff's Proposed Amended Complaint Would Be Futile Because Section 230 Bars All of Plaintiff's Claims.**

In the Opinion, the Court held that Section 230 does not provide Meta with immunity as a matter of law because the challenged advertisements were not "information provided by another information content provider." Opinion at 6–7. In so holding, the Court relied on *Anderson* v. *TikTok, Inc.*, in which the Third Circuit held that decisions made by TikTok's algorithm regarding how to organize and present content to users were TikTok's own first-party speech and thus rendered TikTok an "information content provider" such that Section 230 did not shield it from the plaintiff's claims. *Anderson* v. *TikTok, Inc.*, 116 F.4th 180, 183–84 (3d Cir. 2024); *see* Opinion at 7. As discussed below, the proposed amended complaint, however, seeks to hold Meta liable for merely *hosting* the alleged offending content, and not *promoting* it. As such, the amendment would be futile.

Critically, the claims at issue in *Anderson* sought to hold TikTok liable for *promoting* the offending content to the plaintiff's daughter through its algorithm, resulting in her death—not for the mere *hosting* of that content, as Plaintiff seeks to do here. *See Anderson*, 116 F.4th at 182. Specifically, the only two counts that Anderson brought were for strict products liability and negligence; she alleged that TikTok's algorithm was "defectively designed" because it *promoted* a challenge to minors that encouraged them to commit dangerous acts. *Id.* at 184. These claims were predicated on TikTok's own product design and promotional activity, not the content itself. The Third Circuit made clear that it would hold TikTok liable solely for *promoting* the content at issue through its algorithm but it would not subject TikTok to liability for merely *hosting* the unlawful content. *Id.* at 184 ("TikTok's algorithm, which *recommended* the Blackout Challenge to Nylah on her FYP, was TikTok's own 'expressive activity,' and thus its first-party speech") (emphasis added).

Here, Plaintiff's claims are entirely predicated on the *content* of the third-party advertisements, not on the alleged role of Meta's algorithm in promoting them. Specifically, his proposed FBPPA claim is predicated on Meta's alleged use of Plaintiff's name and likeness—the content of the advertisement—*not* on any defective design in the promotional activities of its algorithm. D.I. 26 Ex. 1 at ¶¶ 32, 38A–I. As Meta previously noted, these property rights are specifically not considered intellectual-property rights under Section 230, reflecting a strong legislative intent to ensure that the immunity conferred by Section 230 continued to bar claims premised on the FBPPA. Ark Code Ann. § 4-75-1112(b); D.I. 18 at 10–11. Similarly, Plaintiff's claims for false-light invasion of privacy and defamation are premised on alleged false depictions of Plaintiff and fictitious quotes attributed to him in the third-party advertisements. D.I. 26 Ex. 1 at ¶¶ 46A–D, 47–51, 56A–D, 57–62. Plaintiff's claim for negligence also seeks to hold Meta liable

for the content of the third-party advertisements, which Plaintiff contends violates Meta's Advertising and Community Standards. D.I. 26 Ex. 1 at ¶¶ 66–71. And Plaintiff's unjust enrichment claim likewise depends entirely on the content of the offending third-party ads, as Plaintiff contends it was unjust for Meta to receive advertising revenue from ads that make unauthorized use of Plaintiff's name and likeness. D.I. 26 Ex. 1 at ¶¶ 74–76. Under the reasoning of *Anderson*, Plaintiff's claims are not actually asserting claims that Meta *promoted* the ads—they merely seek to hold Meta liable because it hosted that content.

While Plaintiff's amended complaint does allege that Meta's algorithm predicts what content will keep and attract users and decides how to maximize exposure for certain content, D.I. 26, Ex. 1 at ¶¶ 9–10, 38, his proposed amended claims have absolutely nothing to do with those functions and are not predicated on the functioning of, or alleged defect in, Meta's algorithm. Instead, his claims are based entirely on the *content* of the allegedly offending third-party ads and Meta's role in *hosting* those ads, bringing these claims solidly within the ambit of Section 230. For this reason, Plaintiff's proposed amended complaint is also futile.[2]

## III.    The Motion Should Be Denied as to Claims Plaintiff Does Not Seek to Amend.

This Court previously dismissed Plaintiff's common law claim for invasion of privacy (appropriation) and standalone "claim" for declaratory and injunctive relief. Opinion at 10–11, 14. Plaintiff's proposed amended complaint does not seek to revive those claims. There is thus no basis to alter or amend the order dismissing them.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion.

---

[2]    This Court may revisit the applicability of Section 230 immunity because its analysis of this issue as to the Original Complaint was dicta that was not essential to the Court's granting of Meta's motion to dismiss, and to which the law of the case doctrine does not apply. *Kool, Mann, Coffee & Co.* v. *Coffey*, 300 F.3d 340, 355 (3d Cir. 2002).

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

OF COUNSEL:

Karen L. Dunn
PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
kdunn@paulweiss.com

Walter F. Brown
Meredith R. Dearborn
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100
wbrown@paulweiss.com
mdearborn@paulweiss.com

Dated:  January 10, 2025

By:  */s/ Matthew D. Stachel*
       Matthew D. Stachel (No. 5419)
       1313 N. Market Street, Suite 806
       Post Office Box 32
       Wilmington, DE 19899-0032
       Tel.: (302) 655-4410
       mstachel@paulweiss.com

*Attorneys for Defendant Meta Platforms Inc.*