## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MIKE HUCKABEE,

                    Plaintiff,

            v.

META PLATFORMS, INC,

                   Defendant.

Civil Action No. 24-773-GBW

---

Sean J. Bellew, BELLEW, LLC, Wilmington, DE; Scott Poynter, Daniel Holland, Clay Ellis, POYNTER LAW GROUP, PLLC, Little Rock, AR.

      *Counsel for Plaintiff*

Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, DE; Karen L. Dunn, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, DC; Walter F. Brown, Meredith R. Dearborn, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, San Francisco, CA.

      *Counsel for Defendant*

## **MEMORANDUM OPINION**

June 24, 2025
Wilmington, Delaware

_____

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Plaintiff's[1] Motion to Alter or Amend Judgment Under Federal Rule of Civil Procedure 59(e) ("Motion") (D.I. 26), which has been fully briefed (D.I. 29; D.I. 31). For the following reasons, the Court denies Plaintiff's Motion.

## I.    SUMMARY OF FACTS

The Court accepts the following allegations as true for the purpose of resolving Plaintiff's Motion.

Meta Platforms, Inc. ("Meta" or "Defendant") is the parent company of Facebook. D.I. 26-1 ¶ 7. Facebook is one of the major social media companies in the world. D.I. 26-1 ¶ 8. Third parties can pay Meta to feature their advertisements in the news feeds of Facebook's users. D.I. 26-1 ¶¶ 8-9. Advertisers can pay a premium for priority featuring. D.I. 26-1 ¶ 9. Meta collects user data to train algorithms to predict what content, including advertisements, will attract and retain users. D.I. 26-1 ¶ 10. These algorithms determine which advertisements will feature at the top of users' news feeds. D.I. 26-1 ¶ 10. Plaintiff is the former Governor of Arkansas. D.I. 26-1 ¶ 2; *see id.* ¶ 12 (alleging that the Ambassador also hosts a television show on Trinity Broadcasting Network).

To promote their cannabidiol ("CBD") products, unidentified third parties posted three advertisements (the "Asserted Advertisements") on Facebook that (1) used Ambassador's name,

_____

[1] Plaintiff is the former Governor of Arkansas. While the Court, in its November 18, 2024 Memorandum Opinion (D.I. 24) and Order (D.I. 25), referred to Plaintiff as "Governor," "Governor Huckabee," or "Plaintiff," Plaintiff has since become the Ambassador to Israel. The Court will thus refer to Plaintiff as "Ambassador," "Ambassador Huckabee," "Plaintiff," or "Plaintiff Huckabee."

photograph, and likeness without Ambassador Huckabee's authorization, (2) made false claims about Ambassador Huckabee, and (3) falsely attributed certain statements to him. D.I. 26-1 ¶¶ 13-20. Meta approved and maintained each of these advertisements. D.I. 26-1 ¶ 23. Meta has also previously approved and maintained similar advertisements regarding other individuals. D.I. 26-1 ¶ 24.

One of the Asserted Advertisements represented that Ambassador Huckabee was resigning from his career at Trinity Broadcast Network to pursue the "greater purpose" of endorsing and promoting CBD gummies. D.I. 26-1 ¶¶ 13-14. Another Asserted Advertisement depicted the Ambassador, on a website that appeared to be FoxNews.com, as using CBD gummies as a replacement for opioids and pain killers. D.I. 26-1 ¶ 16-17. That Asserted Advertisement represented that Ambassador Huckabee suffered from an autoimmune disease and that "CBD cured" him. D.I. 26-1 ¶ 18(a), (d). That Asserted Advertisement also represented the Ambassador as proclaiming that "CBD is the future of medicine in America." D.I. 26-1 ¶ 18(c).

Numerous individuals purchased CBD products in light of the Asserted Advertisements, which Meta featured in the feeds of Facebook users from at least April 9, 2024 to June 6, 2024. D.I. 26-1 ¶¶ 20, 22. Ambassador Huckabee is now wrongly associated with the CBD industry. D.I. 26-1 ¶ 23.

## II.    PROCEDURAL HISTORY

On July 1, 2024, Ambassador Huckabee filed a complaint against Meta alleging *inter alia* (1) violation of Arkansas's Frank Broyles Publicity Protection Act ("FBPPA"), (2) invasion of privacy (appropriation), (3) invasion of privacy (false light), and (4) unjust enrichment. D.I. 1 ¶¶ 25-43, 50-52. On September 5, 2024, Meta moved to dismiss the Complaint on the basis of (1) immunity under Section 230 of the Communications Decency Act and (2) failure to state a claim upon which relief can be granted. D.I. 17; D.I. 18. On October 7, 2024, the Ambassador filed an

opposition brief.  D.I. 20.  A footnote therein requested that any dismissal be without prejudice.  D.I. 20 at 20 n.3.  On October 28, 2024, Meta filed its reply brief in further support of its motion.  D.I. 23.

On November 18, 2024, the Court granted Meta's motion to dismiss with prejudice.  D.I. 24; D.I. 25.  The Court held that while Section 230 did not "provide Meta with immunity as a matter of law," Plaintiff failed to state a claim upon which relief could be granted.  D.I. 24 at 5-15.  The Court also explained that the Court had "discretion to dismiss with prejudice where, like [t]here, the Court [did] 'not have any reason to believe that amendment would cure the identified defects' and when the requesting party 'never submitted a draft amended complaint.'"  D.I. 24 at 15 n.1 (quoting *LabMD Inc. v. Boback*, 47 F.4th 164, 192-93 (3d Cir. 2022); citing *Fletcher-Harlee Corp. v. Pote Concrete Contr., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[F]ailure to submit a draft amended complaint is fatal to a request for leave to amend.")).

On December 16, 2024, Plaintiff filed the present Motion, accompanied by a proposed First Amended Complaint.  D.I. 26; D.I. 26-1.  In his Motion, Plaintiff requests that the Court "alter or amend the judgment entered on November 18, 2024" to grant Plaintiff "leave to amend" the original complaint pursuant "to Federal Rule of Civil Procedure 59(e)."  D.I. 26 at 1.

## III.    LEGAL STANDARDS

Below, the Court describes the legal standards under Rules 59(e), 15(a)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, which generally guide the Court's resolution of Plaintiff's Motion.

## A.    Rule 59(e) of the Federal Rules of Civil Procedure

Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  "Generally, motions for reconsideration under Rule 59(e) must rely on one of the following three grounds: '(1) an

intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest justice.'" *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

### B.    Rule 15(a)(2) of the Federal Rules of Civil Procedure

"Federal Rule of Civil Procedure 15(a)(2) provides that a district court should 'freely give leave [to amend] when justice so requires.'" *Talley v. Wetzel*, 15 F.4th 275, 286 n.6 (3d Cir. 2021) (alterations in original). "Despite this liberal standard, leave to amend may be denied when there is undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Id.* (cleaned up). "Amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (cleaned up). When assessing futility, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (cleaned up).

### C.    Rule 12(b)(6) of the Federal Rules of Civil Procedure

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility

5

of entitlement to relief." *Id.* (quotation marks and citation omitted). In addition, the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Media*, No. 23-cv-1078-GBW, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-cv-239-KAJ, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

Importantly, "a complaint does not fail to state a claim simply because it omits facts that would defeat" an affirmative defense. *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014). Notwithstanding, "[t]his principle does not categorically preclude courts from considering the application of an affirmative defense at the pleading stage." *Ocimum Biosolutions India Ltd. v. LG Chem. Ltd.*, 19-cv-2227-MN, 2022 U.S. Dist. LEXIS 147184, at *12 (D. Del. July 31, 2022) (citation omitted). "Indeed, courts may grant a Rule 12(b)(6) motion in light of an affirmative

6

defense, but only where the affirmative defense clearly appears on the face of the pleading." *Id.*

(citing *Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 105 n.1 (3d Cir. 2013)).

## IV.    DISCUSSION

As described above, Plaintiff requests that the Court "alter or amend the judgment entered

on November 18, 2024" to grant Plaintiff "leave to amend" the complaint pursuant "to Federal

Rule of Civil Procedure 59(e)."   D.I. 26 at 1.   Where (like here) "a timely motion to amend

judgment is filed under Rule 59(e)" seeking leave to amend the complaint, "the Rule 15 and 59

inquiries turn on the same factors." *Burns v. Stratos*, 833 F. App'x 509, 514 n.7 (3d Cir. 2020)

(citations omitted). "Federal Rule of Civil Procedure 15(a)(2) provides that a district court should

'freely give leave [to amend] when justice so requires.'" *Talley*, 15 F.4th at 286 n.6 (alteration in

original).  "Despite this liberal standard, leave to amend may be denied when there is undue delay,

bad faith, dilatory motive, prejudice, [or] futility." *Id.* (cleaned up).[2]

Here, Meta asserts that the Court should deny leave to amend on the basis of futility and

undue delay.  D.I. 29 at 5-20.  After reviewing the parties' briefing (D.I. 26; D.I. 29; D.I. 31) and

Plaintiff's proposed First Amended Complaint (D.I. 26-1), the Court agrees that amendment would

be futile.   In particular, while Section 230 would not bar Plaintiff's proposed First Amended

Complaint, Plaintiff's proposed First Amended Complaint would fail to survive a sufficiency

challenge under Rule 12(b)(6).   Below, the Court sets forth its analysis for each of these

conclusions.[3]

---

[2] Notably, the "liberal standard" for amendment "becomes less flexible after a final judgment is entered." *Werner v. Werner*, 267 F.3d 288, 296 (3d Cir. 2001).

[3] Since the Court is denying Plaintiff's Motion on the basis of futility, the Court need not, and does not, address undue delay.

A.   **Section 230 Would Not Bar Plaintiff's Proposed First Amended Complaint**

The Court begins its analysis with the "threshold" issue of immunity under Section 230. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024); *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 273 (S.D.N.Y. 2016) (resolving the "threshold" issue of immunity under § 230 before resolving the defendant's "substantive challenges to each claim")).

As described in the Court's November 18, 2024 Memorandum Opinion ("November Opinion") (D.I. 24), Section 230 provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  Section 230 also provides: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).  "When satisfied, these provisions operate in tandem to confer immunity." D.I. 24 at 5.

The three elements for Section 230 immunity are: "(1) the defendant must be a provider or user of an interactive computer service; (2) the asserted claims must treat the defendant as a publisher or speaker of information; and (3) the challenged communication must be information provided by another information content provider." *Metroka v. Pa. State L. Enf't*, No. 23-2004, 2024 U.S. App. LEXIS 23188, at *8 (3d Cir. Sep. 12, 2024) (cleaned up).  Meta bears the burden of establishing these elements. *See Calise*, 103 F.4th at 738 n.1.

In its November Opinion, the Court held that Meta is an "information content provider." D.I. 24 at 7.  The Court analogized this action to *Anderson v. TikTok*, in which the Third Circuit explained that TikTok's for-you-page "algorithm decides on the third-party speech that will be included in or excluded from a compilation—and then organizes and presents the included items on users' FYP." D.I. 24 at 7 (citing 116 F.4th 180, 184 (3d Cir. 2024) (cleaned up)).  The Third

Circuit held that the decisions made by TikTok's algorithm with regard to the content at issue were "TikTok's own expressive activities, and thus its first-party speech." *See id.* (cleaned up). Such speech rendered TikTok an "information content provider" and thus Section 230 did "not bar the plaintiff's claims." *See id.* (cleaned up).

In this action, Plaintiff similarly alleged that "Meta collects user data to train machine-learning algorithms to predict what content will keep and attract users" and "decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements." D.I. 1 ¶ 10. The Court held that these decisions were "Meta's, as they were TikTok's, 'own expressive activit[ies]' and 'first-party speech.'" D.I. 24 at 7 (quoting *Anderson*, 116 F.4th at 183). The Court, therefore, concluded that such speech rendered "Meta an 'information content provider' and not immune to the Governor's claims." D.I. 24 at 7.

Now, Meta attempts to resurrect Section 230 and contend that the immunity provided therein would render Plaintiff's proposed First Amended Complaint futile. D.I. 29 at 18. Meta also contends that the Court may "revisit" Section 230 because the Court's analysis on immunity in its November 2024 Opinion was "dicta." D.I. 29 at 20 n.2. In his reply brief, Plaintiff contends that "Section 230 is not at issue" in the Ambassador's Motion and that "Meta failed to file a motion for reconsideration to properly raise its affirmative defense again." D.I. 31 at 3. The Court need not address these procedural arguments, however, since Meta's new or revised arguments on Section 230, like Meta's previous arguments, fail.

*First*, Meta attempts to distinguish *Anderson* from this action. D.I. 29 at 18. In particular, Meta asserts that, while Plaintiff's proposed First Amended Complaint "seeks to hold Meta liable for merely *hosting* the alleged offending content," "the claims at issue in *Anderson* sought to hold TikTok liable for *promoting* the offending content." D.I. 29 at 18. Meta's purported distinction,

however, is strained.  Plaintiff's proposed First Amended Complaint alleges that "Meta collects user data to train machine-learning algorithms to predict what content will keep and attract users" and "decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements."  D.I. 26-1 ¶ 10.  When considered "in the light most favorable to" Plaintiff (*Brady*, 2024 U.S. Dist. LEXIS 160991, at *4), these allegations are not meaningfully distinct from the allegations in *Anderson*, the latter of which include that TikTok "recommended and promoted" the offending content "through its algorithm" (*Anderson*, 116 F.4th at 182).

Moreover, Meta's purported distinction would have no effect.  Immunity under Section 230 does not require that the underlying claims involve the promotion of the offending content. *See Metroka*, 2024 U.S. App. LEXIS 23188, at *8 (confirming that the three elements for Section 230 immunity are: "(1) the defendant must be a provider or user of an interactive computer service; (2) the asserted claims must treat the defendant as a publisher or speaker of information; and (3) the challenged communication must be information provided by another information content provider").  Nor does Section 230 immunity require parity between the grounds that inform immunity — here, the algorithmic decision-making that maximized the exposure of certain advertisements — and the allegations that inform the claims at issue — here, the allegations regarding Plaintiff's state law claims.  For these reasons, were the Court to credit Meta's assertion that Plaintiff "seeks to hold Meta liable for merely *hosting* the alleged offending content, and not *promoting* it," such would not impact the Court's separate analysis under Section 230.

*Second*, Meta attempts to invoke the legislative intent of the Arkansas legislature to support its argument.  As background, Section 230 "carves out five limitations" to immunity "in § 230(e)." *Hepp v. Facebook*, 14 F.4th 204, 209 (3d Cir. 2021).  "[R]elevant here, § 230 has '[n]o effect on intellectual property.'"  *Id.* (quoting 27 U.S.C. § 230(e)(2)).  Section 1112(b) of the FBPPA

"provides that 'the property rights granted by this subchapter are not considered intellectual property for purposes of 47 U.S.C. § 230.'" D.I. 18 at 10-11 (emphasis omitted) (quoting Ark. Code Ann. § 4-75- 1112(b)). Meta contends, therefore, that Section 1112(b) of the FBPPA reflects "a strong legislative intent to ensure that the immunity conferred by Section 230 continued to bar claims premised on the FBPPA." D.I. 29 at 19. That legislative intent, however, is at most cabined to the Arkansas Legislature and the FBPPA's intersection with the § 230(e)(2) *exception* to immunity. In other words, neither Meta nor this Court may divine the scope of immunity under § 230 of the CDA, a federal statute, from § 1112(b) of the FBPPA, a state statute.

Thus, notwithstanding Meta's new arguments, the Court's analysis of whether Meta would be immune to the claims in Plaintiff's proposed First Amended Complaint mirrors the Court's original analysis of whether Meta was immune to the claims in Plaintiff's original complaint. Specifically, Plaintiff alleges, in his proposed First Amended Complaint, that "Meta collects user data to train machine-learning algorithms to predict what content will keep and attract users" and "decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements." D.I. 26-1 ¶ 10; *see* D.I. 1 ¶ 10 (alleging the same). "These decisions are Meta's, as they were TikTok's, 'own expressive activit[ies]' and 'first-party speech.'" *See* D.I. 24 at 7 (quoting *Anderson*, 116 F.4th at 183). Thus, as before, such speech would render Meta an "information content provider" and not immune to Plaintiff's proposed amended claims.

**B.    Plaintiff's Proposed Amended Complaint Would Be Futile**

Plaintiff, in his proposed First Amended Complaint, does not state any plausible claims for relief. In particular, each of the amended claims (violation of the FBPPA, invasion of privacy –

11

false light, and unjust enrichment), and each of the newly added claims (defamation and negligence), would be futile. The Court addresses each in turn below.[4]

1.    **The Amended FBPPA Claim Would Be Futile**

As described in the Court's November Opinion, the FBPPA provides that "a person who commercially uses the name, voice, signature, photograph, or likeness of an individual is liable to the holder of the property right provided by this subchapter for damages and disgorgement of profits, funds, goods, or services if the commercial use was not authorized under § 4-75-1104(c)." Ark. C. § 4-75-1108.

The FBPPA also provides: "It is not a violation of this subchapter if the name, voice, signature, photograph, or likeness of an individual is used . . . [b]y a service provider of a system or network if the service provider: (i) Does not have actual knowledge that a photograph or likeness on the system or network is in violation of this subchapter; or (ii) In the absence of such actual knowledge, is not aware of facts or circumstances from which a violation of this subchapter is apparent." Ark. C. § 4-75-1110(a)(1)(F). "In other words, the FBPPA imposes a scienter requirement." D.I. 24 at 12.

In the Court's November Opinion, the Court held that Plaintiff failed "to allege that Meta had the requisite scienter." D.I. 24 at 10. In particular, the Court explained that Plaintiff "Huckabee allege[d] that 'Meta approved and maintained [the Asserted Advertisements] with actual malice or, at least, with reckless disregard to their truthfulness or accuracy.'" *Id.* (citing D.I. 1 ¶ 34). However, the Court disregarded that "recital of scienter, which is itself [was] a legal

---

[4] As Meta observes, Plaintiff's Motion is also futile with respect "to the two now-dismissed claims that Plaintiff has not sought to replead," i.e., a claim for invasion of privacy – appropriation and a "claim" for declaratory and injunctive relief. *See* D.I. 29 at 5.

conclusion, because it [was] a 'mere conclusory statement[].'" *Id.* (citing *Princeton Univ.*, 30 F.4th at 342). Indeed, that allegation failed "to allege 'facts sufficient to draw the reasonable inference that' Meta had scienter." *Id.* (quoting *Doe*, 30 F.4th at 342).

The Court further explained that the following allegations from Plaintiff were insufficient to allow the Court to draw the reasonable inference that meta had the requisite scienter: "Meta sells advertisements, Meta uses its algorithm to popularize those advertisements, Plaintiff is a nationally recognized celebrity, Meta hosted a fake 'FoxNews.com' link, Meta approved these scams, and Meta has been approving these scams for other celebrities since at least 2021." *Id.* (quoting D.I. 15 at 20).

Because the complaint did not sufficiently allege scienter, the Court held that Plaintiff "Huckabee fail[ed] to sufficiently plead his FBPPA claim." *Id.*

Plaintiff's proposed First Amended Complaint does not cure this deficiency. The Court will address Plaintiff's new allegations in turn. *First*, Plaintiff's proposed First Amended Complaint alleges:

> A. Meta's advertising business ("Meta Ads") produces ads using basic material supplied by scammers to its automated Ads Manager application.
>
> B. Through its comprehensive "suite" of advertising tools and applications, Meta Ads controls every aspect of the production for each ad, thereby gaining a substantial amount of information about each advertiser, its products, and its objectives. The production process provides Meta with ample opportunities to detect ads that are fraudulent or that misappropriate information or images that belong to others, before such ads are included in the inventory vying for advertising space on Meta's social medial platforms.
>
> C. Once the material is uploaded into Meta's Ads Manager application by its customer, Meta has its systems review each advertisement for accuracy and authenticity, and whether the ad is consistent with Meta's policies, terms, and conditions.
>
> D. Meta has developed and implemented both automated and manual review systems to determine whether an ad violates its own policy standards before Meta

13

allows the ad to go live. Meta's automated and manual reviews are made in consideration of its published Advertising Standards and Community Standards. Under its own standards, Meta specifically provides that it will prohibit "potential privacy violations," "unsettling or inaccurate" information, and moreover, bar ads that are not "authentic."

E. Thus, under Meta's own published Advertising and Community Standards, Meta reviewed the Unauthorized Ads for privacy violations, for accuracy, and for authenticity. Yet even after its reviews, Meta chose to publish the Unauthorized Ads knowing they promoted CBD products falsely endorsed by the Governor without obtaining his permission or even attempting to notify him to obtain his authority to run the Unauthorized Ads

D.I. 26-1 ¶ 38(A)-(E) (citation omitted).

None of these allegations, whether considered individually, together, or collectively with the other allegations in the proposed First Amended Complaint, allow the Court "to draw the reasonable inference" of Meta's scienter that the images of Plaintiff were used without authorization. *See Klotz*, 991 F.3d at 462. For example, that Meta "implemented both automated and manual review systems to determine whether an ad violates its own policy standards" (D.I. 26-1 ¶ 38(D)) and had "ample opportunities" to "detect . . . misappropriated . . . images" (D.I. 26-1 ¶ 38(B)) does not allow the "reasonable inference" (*see Klotz*, 991 F.3d at 462) that Meta actually *knew* of the misappropriation. *See Van Horn, Metz & Co. v. JPMorgan Chase & Co.*, No. CV 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. Mar. 15, 2024) (holding that the allegation that "the Defendant had compliance and risk management programs" did not allow the reasonable inference that the Defendant *knew* of the fraud at issue).

Instead, the alleged "review systems" and "ample opportunities" to "detect . . . misappropriated . . . images" amount to a "sheer possibility" that Meta knew of the misappropriation. *See Ashcroft*, 556 U.S. at 678. Stated otherwise, the alleged "review systems" and "ample opportunities" are "merely consistent" with Plaintiff's theory of scienter and stop "short of the line between possibility and plausibility of entitlement to relief." *See id.*

14

In his Motion, Plaintiff underscores the proposed allegation in ¶ 38(C) (blockquoted above) that Meta reviews "each advertisement for accuracy." D.I. 26 at 3.[5] Similar to the preceding analysis, however, that Meta reviews the accuracy of advertisements does not support the "reasonable inference" (*see Klotz*, 991 F.3d at 462) that Meta had the requisite scienter of misappropriation. The remaining allegations in ¶ 38(A)-(F) that are blockquoted above likewise do not allow the reasonable inference of scienter.

*Second*, Plaintiff's proposed First Amended Complaint alleges various instances in which Facebook previously published advertisements that contained images that were used without authorization. D.I. 26-1 ¶ 38(F)-(G). However, that Facebook, "one of the most dominant social media companies in the world" (D.I. 26-1 ¶ 8), has previously published a handful of images that were used without authorization hardly allows for the reasonable inference that Meta knew that the images of Plaintiff were also used without authorization.

*Third*, Plaintiff's proposed First Amended Complaint alleges that Meta did not obtain Plaintiff's consent to use the images. D.I. 26-1 ¶ 38(H). While the failure of the third-party that originally created the offending content to obtain the consent of Plaintiff to use the images may support a reasonable inference of the third-party's knowledge of misappropriation, the alleged failure of Meta to obtain the same consent, where Meta is providing a forum in which the content is posted and employing an algorithm to determine the placement of that content, does not support a reasonable inference of Meta's knowledge of misappropriation. Otherwise, Meta would be

---

[5] The Court notes that Plaintiff misquoted his own proposed allegation. *Compare* D.I. 26 at 3 (referencing the allegation that Meta "review[s] each advertisement for accuracy, and whether the ad is consistent with its policies, terms, and conditions" (citing D.I. 26-1 ¶ 38(C)), *with* D.I. 26-1 ¶ 38(C) ("Meta has its system review each advertisement for accuracy and authenticity, and whether the ad is consistent with Meta's polices, terms, and conditions.").

required, improvidently, to obtain the consent of the owner of every image on Facebook before posting content with that image.

Finally, the remaining allegations in ¶ 38 of Plaintiff's proposed First Amended Complaint, as well as the allegations in ¶¶ 39-40,[6] likewise fail to allow a reasonable inference of scienter. Some are irrelevant, or essentially irrelevant, to scienter with respect to the Asserted Advertisements. *See, e.g.*, D.I. 26-1 ¶ 38(I) ("Meta also collects profits by collecting data about its users."). Others are "mere conclusory statements." *See Princeton Univ.*, 30 F.4th at 342; *see also, e.g.*, D.I. 26-1 ¶ 38(H) ("Meta knowingly, or at least recklessly, chose to publish the ads for a commercial purpose.").

For the foregoing reasons, Plaintiff's proposed First Amended Complaint would fail to state a violation of the FBPPA.

## 2.    The Amended Invasion of Privacy – False Light Claim Would Be Futile

As described in the Court's November Opinion (D.I. 24), the elements for invasion of privacy (false light) are "(1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Dodrill v. Ark. Democrat Co.*, 265 Ark. 628, 638 (Ark. 1979). The second element, which can be described as "actual malice," "requires a showing of more than mere negligence." *Id.* at *638-39. "There must be sufficient evidence to permit the conclusion that the Defendant, in fact, entertained serious doubts as to the truth of his publication." *Id.* at 639. The Western District of Arkansas has held that, under Arkansas law, the failure to conduct "proper due diligence" on

---

[6] While ¶ 38 of the proposed First Amended Complaint contains the majority of Plaintiff's new scienter allegations, ¶¶ 39-40 contain additional allegations that at least Plaintiff believes support scienter. *See* D.I. 26-1 ¶ 53.

16

the truthfulness of a story does not constitute malice. *Yeager v. KUAF 91.3 NPR Pub. Radio*, No. 20-cv-05054, 2020 WL 2449348, at *5 (W.D. Ark. May 12, 2020), *aff'd*, No. 20-2198, 2021 WL 2492775 (8th Cir. Jan. 13, 2021) (non-precedential).

In its November Opinion, the Court held that Plaintiff failed "to allege that Meta acted with malice." D.I. 24 at 11. In particular, the Court held that the allegation that "Meta approved and maintained [the Asserted Advertisements] with actual malice or, at least, with reckless disregard to their truthfulness or accuracy" was a mere "conclusory allegation[.]" D.I. 24 at 11 (citing D.I. 1 ¶ 34; *Yeager*, 2020 WL 2449348, at *5). The Court also held that the following also failed to allow the Court to draw the reasonable inference that Meta acted with malice:

> The Complaint alleges Meta approved and maintained the advertisements for products [Ambassador] Huckabee has never used, endorsed, or promoted, and it also alleges Meta has hosted fraudulent advertisements for CBD products since 2021. Because Meta has hosted these scam ads since at least 2021, Meta certainly has "knowledge of its falsity," or at the very least, "reckless disregard of the truth." Moreover, [Ambassador] Huckabee has publicly denounced marijuana.

D.I. 24 at 12 (citing D.I. 20 at 18-19 (citations omitted)).

The Court explained, for example, it was "not reasonable to infer that Meta entertained serious doubts about the truth of the Asserted Advertisements because Meta approved and maintained them." D.I. 24 at 12. Otherwise, the Court explained, "Meta would entertain serious doubts about the truth of every advertisement published." D.I. 24 at 12. In addition, the Court explained that it was "not reasonable to infer that Meta entertained serious doubts about the Asserted Advertisements since [Plaintiff] Huckabee has publicly denounced marijuana." D.I. 24 at 12.

Plaintiff's proposed First Amended Complaint does not cure these deficiencies. The proposed First Amended Complaint alleges that "Meta knew, or acted in reckless disregard of, the falsity of the publicized matter and the false light in which the Plaintiff would be placed for all the

17

reasons and allegations asserted above in Paragraphs 38 through 40, including their subparagraphs, which are all fully incorporated herein as if repeated here word for word." D.I. 26-1 ¶ 53. The Court's analysis of ¶¶ 38-40 (*supra* § IV(B)(1)) extends here, such that Plaintiff's proposed First Amended Complaint would also fail to adequately allege the malice element of invasion of privacy – false light.

**3.    The Amended Unjust Enrichment Claim Would Be Futile**

As described in the Court's November Opinion (D.I. 24), "[t]o find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore." *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 931 F.3d 647, 655 (8th Cir. 2019) (citing *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 36 (Ark. 2011)). However, "[t]here must be some operative act, intent, or situation to make the enrichment unjust and compensable." *Id.* "One is not unjustly enriched by receipt of that to which he is legally entitled." *Colonia Ins. Co. v. City Nat'l Bank*, 988 F. Supp. 1242, 1254 (W.D. Ark. 1997). "No recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it." *Id.* Further, "[o]ne who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right." *Air Evac EMS*, 931 F.3d at 655.

In its November Opinion, the Court explained that Plaintiff "failed to make any allegations that allow the reasonable inference that Meta had any 'fault.'" D.I. 24 at 13 (citation omitted). The Court explained that, while Meta's use of its algorithm to determine which advertisements to feature rendered Meta an information content provider, such use did "not establish culpability." D.I. 24 at 13. Since Meta was "free from fault," there was no unjust enrichment. D.I. 24 at 13.

Plaintiff does not add any allegations to show fault, thereby ensuring futility. Moreover, Plaintiff contends that his original allegations are sufficient to support a claim of unjust

18

enrichment, since "even an innocent defendant is subject to an unjust-enrichment claim brought by a more deserving party." D.I. 26 at 6 (citing *Trickett v. Spann*, 613 S.W.3d 777, 779 (Ark. Ct. App. 2020)). However, Plaintiff is not the "more deserving party" compared to Meta.

Ultimately, claims for "unjust enrichment" are "fact-bound claims" that turn on "case-by-case individual circumstances" (*Johnson v. Ark. Convalescent Ctrs., Inc.*, No. 12-cv-143-DPM, 2013 U.S. Dist. LEXIS 104256, at *8 (E.D. Ark. July 25, 2013) (citing Restatement (Third) of Restitution and Unjust Enrichment § 1 (2010))), and the individual factual allegations in Plaintiff's proposed First Amended Complaint, taken as true and considered in the light most favorable to him, would not plausibly support a claim for unjust enrichment.

**4.    The Newly Added Defamation Claim Would Be Futile**

The original complaint did not contain a claim for defamation. Such a claim under Arkansas law requires the following elements: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Webster v. Webster*, 689 S.W.3d 133, 136 (Ark. 2024). A seventh element is required when the allegedly defamatory statements involve a public figure. *Dodrill*, 590 S.W.2d at 634. Specifically, the plaintiff must allege that the publisher acted with "actual malice," that is, "knowledge of falsity or a reckless disregard for the truth." *Id.* at 634, 637; *see Thomson Newspaper Pub., Inc. v. Coody*, 896 S.W.2d 897, 901 (Ark. 1995) (citing *Harte-Hanks Communs., Inc. v. Connaughton*, 491 U.S. 657 (1989)). "Under . . . Arkansas . . . law," the malice inquiry for invasion of privacy – false light and defamation are identical. *Hobbs v. Pasdar*, 682 F. Supp. 2d 909, 925-32 (E.D. Ark. 2009); *see* D.I. 26 at 5 (likewise observing that, at least with respect to malice, Plaintiff's "claims for false light and defamation work hand in hand").

The parties agree that the allegedly defamatory statements in this action, depicting Ambassador Huckabee as an avid consumer of cannabis products, involve a public figure (i.e., the Ambassador to Isreal, former Governor of Arkansas, etc.). *See, e.g.*, D.I. 26 at 5 (acknowledging that Ambassador "Huckabee is a public figure"). As such, Plaintiff must adequately allege malice to support his claim of defamation. *See Dodrill*, 590 S.W.2d at 634. For the same reasons discussed *supra* § IV(B)(2), however, Plaintiff's proposed First Amended Complaint would fail to sufficiently plead malice.

**5.    The Newly Added Negligence Claim Would Be Futile**

The original complaint did not contain a claim for negligence. Such a claim under Arkansas law requires the following elements: "[1] that the defendant owed a duty to the plaintiff, [2] that the defendant breached that duty, and [3] that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co. v. Slater*, 386 S.W.3d 439, 449 (2012). Here, Plaintiff's proposed First Amended Complaint would fail to sufficiently allege any duty owed by Meta to Plaintiff.

In particular, Plaintiff alleges in his proposed First Amended Complaint that "Meta owed a duty to Plaintiff to design and operate its advertising business in a commercially reasonable manner." D.I. 26-1 ¶ 66. Plaintiff also alleges a variety of manners in which Meta purportedly breached this duty. D.I. 26-1 ¶¶ 66-71. Plaintiff summarizes these breaches in his Motion, contending that Meta breached its duty by "violating its own standards and failing to warn Huckabee of the CBD ads that featured his name, image, and likeness, and failing to ask his permission to publish the ad." D.I. 26 at 6.

In response, Meta contends that Plaintiff fails "to plead a legal duty owed by Meta" and that Plaintiff fails to identify any law "creating such a duty." D.I. 29 at 15-16. Meta then identifies two instances in which courts have denied similar assertions of duty. First, Meta asserts that "at least one court has rejected an attempt to allege a generalized duty of professional negligence to

20

safeguard another's reputation as inconsistent with Arkansas law." D.I. 29 at 16 (citing *Yeager*, 2020 WL 2449348, at \*5). Meta then flags another case in which an Arkansas court held that "a store's policy of maintaining a service assisting customers with carrying groceries 'd[id] not translate into a legal duty' to provide that service, such that the failure to do so would constitute negligence." D.I. 29 at 16 (quoting *Kroger Co. v. Smith*, 218 S.W.3d 359, 363 (Ark. Ct. App. 2005)).

Here, Plaintiff would fail to sufficiently allege a legal duty owed by Meta for at least three reasons. *First*, as stated in *Yeager*, "Arkansas does not recognize a claim for professional negligence." *Yeager*, 2020 WL 2449348, at \*5. *Second*, Meta's policies do not "translate into a legal duty" to effectuate those policies. *See Kroger*, 218 S.W.3d at 363. *Third*, the only decision upon which Plaintiff relies to support his allegation of duty, *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024) (D.I. 26 at 6), is a decision from the Northern District of California that is resolving a California claim for negligence. That decision is not applicable here, in the District of Delaware, in an action regarding an Arkansas claim for negligence.

## V.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion to Alter or Amend Judgment Under Federal Rule of Civil Procedure 59(e) (D.I. 26). The finality of the original judgment will be restored.[7] The Court will enter an Order consistent with this Memorandum Opinion.

---

[7] Rule 54(a) of the Federal Rules of Civil procedure provides: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." The Rule's "reference to 'an order from which an appeal lies' . . . embraces . . . any 'final decision' from which an appeal is permitted under Section 1291 of Title 28." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2651 (4th ed.). "Generally, a dismissal with prejudice constitutes an appealable final order under § 1291." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013). Here, the parties appear to agree that the Court's November 18, 2024 Order (D.I. 25), which was a dismissal with prejudice, constitutes a final judgment. The Court has no reason to consider or suggest otherwise and, thus, the time for appeal shall begin to run from the entry of the accompanying

Order. *See Banister v. Davis*, 590 U.S. 504, 508-09 (2020) ("The filing of a Rule 59(e) motion within the 28-day period suspends the finality of the original judgment for purposes of an appeal. Without such a motion, a litigant must take an appeal no later than 30 days from the district court's entry of judgment. But if he timely submits a Rule 59(e) motion, there is no longer a final judgment to appeal from. Only the disposition of that motion restores the finality of the original judgment, thus starting the 30-day appeal clock. And if an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment." (cleaned up)).