## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

**MIKE HUCKABEE**

    Plaintiff

v.

**META PLATFORMS, INC.**

    Defendant

Civil Action No. 24-cv-773-GBW

---

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER
## SUPPORT OF RESPONSE IN OPPOSITION TO MOTION TO DISMISS

---

**BELLEW, LLC**

Sean J. Bellew, Delaware Bar No. 4072
sjbellew@bellewllc.com
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808
(302) 252-4951

**POYNTER LAW GROUP, PLLC**

Scott Poynter, Ark. Bar 90077*
scott@poynterlawgroup.com
Clay Ellis, Ark. Bar 2023183*
clay@poynterlawgroup.com
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943

*Admitted pro hac vice*

*Attorneys for Plaintiff*

DATED: July 23, 2026

ii

# TABLE OF CONTENTS

**NATURE AND STAGE OF PROCEEDINGS** ........................................................................ 1

**STATEMENT OF FACTS** ................................................................................................. 1

**SUMMARY OF ARGUMENT** ........................................................................................... 1

**ARGUMENT** .................................................................................................................. 3

    A. DEFINITIONS OF COMMERCIAL USE AND UNAUTHORIZED COMMERCIAL USE. ............ 3

    B. THE ORIGINAL COMPLAINT ADEQUATELY PLEADS META'S COMMERCIAL USE OF
    PLAINTIFF'S NAME, IMAGE, AND LIKENESS IN ITS ADVERTISING. ....................................... 4

    C. META ADMITS ITS UNAUTHORIZED USE OF PLAINTIFF'S NAME, IMAGE, AND LIKENESS
    WAS FOR ITS ADVERTISING IN VIOLATION OF THE BROYLES ACT. ..................................... 11

**CONCLUSION** ............................................................................................................. 11

# TABLE OF CITATIONS

## CASES

*Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) ................................................................. 2

*Huckabee v. Meta Platforms, Inc.*, No. 25-2347, 2026 WL 1817252 (3d Cir. June 23, 2026) 1, 2, 4

*Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323 (3d Cir. 2022) .................................... 3, 4

## STATUTES

Ark. Code Ann. § 4-75-1102(a)-(b) ............................................................................................ 3

Ark. Code Ann. § 4-75-1103(1)(A)-(B) ...................................................................................... 4

Ark. Code Ann. § 4-75-1103(1)(A)(i)-(ii) ................................................................................... 2

Ark. Code Ann. § 4-75-1112(a)(1) .............................................................................................. 3

Ark. Code Ann. 4-75-1108(a)-(b) ............................................................................................... 4

## NATURE AND STAGE OF PROCEEDINGS

The Third Circuit affirmed the Court's order denying Plaintiff's motion to alter or amend judgment with respect to the Frank Broyles Publicity Protection Act but vacated its dismissal of the original complaint holding it plausibly pled Meta was "'aware of facts and circumstances' from which the advertisements' misuse of Huckabee's name, image, or likeness was 'apparent.'" *Huckabee v. Meta Platforms, Inc.*, No. 25-2347, 2026 WL 1817252, *5 (3d Cir. June 23, 2026). The Third Circuit remanded this action for the Court to address Meta's remaining challenge to the original complaint's Broyles Act claim: whether it sufficiently pleads the commercial use element. The Third Circuit's mandate was entered on July 15, 2026. D.I.37.

Plaintiff Mike Huckabee ("Plaintiff" or "Ambassador Huckabee") respectfully submits this supplemental brief in further support of his response in opposition (D.I.20) to Meta's motion to dismiss (D.I.18).

## STATEMENT OF FACTS

Plaintiff adopts and re-incorporates the facts provided in his response in opposition to Meta's motion to dismiss. D.I.20 at 6-7.

## SUMMARY OF ARGUMENT

The issue before the Court is simple—whether the original complaint alleges Meta commercially used Ambassador Huckabee's name, image, and likeness? The issue of Meta's knowledge has already been decided by the Third Circuit in the affirmative. The Court has also already held the ads were Meta's "own expressive activit[ies]" and "first-

1

party speech." D.I.24 at 7 (citing *Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024).

Given the holdings so far, the original complaint plausibly pleads commercial use.

The Broyles Act says commercial use "means the use of an individual's readily identifiable name, voice, signature, photograph, or likeness . . . [f]or advertising, selling, or soliciting purchases of products, merchandise, goods, or services; or . . . in connection with products, merchandise, goods, or other commercial activity that is not exempt under this subchapter." Ark. Code Ann. § 4-75-1103(1)(A)(i)-(ii). The original complaint alleges such use through advertisement revenue, website traffic, and even successful solicitation. *See* D.I.1 ¶ 8 ("almost 98% of Meta's $134 billion dollars in revenue last year came from the sale of advertisements."), ¶ 10 ("Meta decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements."), ¶ 22 ("Plaintiff has talked to numerous fans who, unfortunately, believed these advertisements were true and purchased the CBD products."), ¶ 24 ("Since as early as 2021, news outlets have reported similar instances where Facebook has approved and maintained advertisements that unauthorizedly exploit the name, image, and likeness of other media personalities to sell CBD products.").

Originally, Meta argued the original complaint failed to allege that Meta, "as opposed to the third-party advertisers," D.I.18 at 19, commercially used Plaintiff's name and likeness. This argument fails because the Court has held the advertisements were Meta's first-party speech. D.I.24 at 7.

Given the Court's holding on first-party speech, D.I.24 at 7, and the Third Circuit's opinion on reading the complaint in a plaintiff's favor, *Huckabee*, 2026 WL 1817252 at *4

2

(citing *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 326 (3d Cir. 2022)), it is clear Meta commercially used Plaintiff's name, image, and likeness. Meta's motion to dismiss should be denied and the case should proceed as to Count I of the original complaint.

## ARGUMENT

The Broyles Act expressly states its purpose is to protect the name, image, and likeness (NIL) of Arkansas citizens who have spent their lives developing and maintaining their reputations. Ark. Code Ann. § 4-75-1102(a)-(b). Indeed, the legislature enacted the Broyles Act to guard Arkansans from the exploitation and unauthorized commercial use of their likenesses. *Id.* It also expressly directed the Broyles Act be liberally construed to achieve its stated purpose. Ark. Code Ann. § 4-75-1112(a)(1).

Given the Third Circuit's decision, the present focus is whether the original complaint plausibly pleads that Meta's use of Plaintiff's name, image, and likeness was for an unauthorized commercial use.[1]

**A. Definitions of Commercial Use and Unauthorized Commercial Use.**

The Broyles Act defines commercial use at Ark. Code Ann. § 4-75-1103 as follows:

(1)
    (A) "Commercial use means the use of an individual's readily identifiable name, voice, signature, photograph, or likeness:

        (i) For *advertising*, *selling*, or *soliciting* purchases of products, merchandise, goods, or services; or

---

[1] The Third Circuit noted key facts from the original complaint about Meta's commercial use, including the following:
- Meta sells advertisements;
- Meta allows advertisers to pay more to popularize those advertisements; and
- Meta approved the advertisements.

*Huckabee*, 2026 WL 1817252 at *2.

3

(ii) On or in connection with products, merchandise, goods, or other commercial activity that is not exempt under this subchapter.

(B) "Commercial use" does not mean the use of an individual's name, voice, signature, photograph, or likeness to identify the individual for the purpose of:

(i) Data collection or data reporting and supplying the data collected or reported; or

(ii) Data processing, data matching, data distribution, or data licensing[.]

Ark. Code Ann. § 4-75-1103(1)(A)-(B) (emphasis added). Further, the Broyles Act commands that a person who commercially uses a name, voice, signature, photograph, or likeness is liable to the property right holder for damages, disgorgement of profits, funds, goods, or services if the commercial use was not authorized. Ark. Code Ann. 4-75-1108(a)-(b).

**B. The Original Complaint Adequately Pleads Meta's Commercial Use of Plaintiff's Name, Image, and Likeness in its Advertising.**

With the Broyles Act's commercial use element being defined above, the Court must assume the allegations within the original complaint as true, construe them in the light most favorable to Plaintiff, and draw all inferences in his favor. *Huckabee*, 2026 WL 1817252 at *4 (citing *Lutz*, 49 F.4th at 328). Considering these pleading standards, the original complaint plausibly pleads the following facts:

- Meta approved and maintained advertisements on its Facebook platform that unlawfully appropriated Huckabee's name, photograph, and intellectual property. D.I.1 ¶ 1.

4

- Meta profited from these unlawful uses of Huckabee's name, image, and likeness in its advertising. *Id.*

- With Meta's approval of these unauthorized ads, the ads reached millions of Facebook users. *Id.*

- Meta is the parent company of Facebook and Instagram—two social media platforms with global reach. Together, Facebook and Instagram have more than five billion monthly active users. D.I.1 ¶ 7.

- Meta is in the business of selling advertisements to support its operations. In fact, almost 98% of Meta's $134 billion dollars in revenue in 2023 came from the sale of advertisements. D.I.1 ¶ 8.

- Meta allows its advertisers to target their audiences as broadly or narrowly as they wish. On Facebook, for example, advertisers can pay to have products or other messages appear in users' news feeds. These advertisers can pay even more to have their advertisements appear more prominently on users' news feeds. D.I.1 ¶ 9.

- Meta collects user data to train machine-learning algorithms to predict what content will keep and attract users. In 2018, Facebook's director of analytics, Dan Zigmond, explained that about 2,000 posts appear on a user's feed every day, but the average user only looks at the first 200 posts. As a result, Meta decides which posts appear at the top of users' newsfeeds to maximize exposure to certain posts, including advertisements. D.I.1 ¶ 10.

5

- According to Ad Observer, a research project by New York University, online advertisements are usually seen only by the audience the advertiser targets, and then they disappear. D.I.1 ¶ 11.

- In or around May 2024, Plaintiff learned advertisements were appearing on Facebook that claimed he would be leaving Trinity Broadcast Network to pursue "[a] greater purpose":



The supposed greater purpose was to endorse and promote CBD gummies. D.I.1 ¶ 13.

- Another advertisement falsely claimed Plaintiff was suffering from health problems but that a miracle had helped him turn his life around:

6



Again, the alleged miracle was CBD. D.I.1 ¶ 14.

- A third advertisement took Facebook users to a website that appeared to be FoxNews.com:



The advertisement, however, was not from Fox News. Instead, the advertisement was disguised as Fox News in another ruse to promote CBD gummies. D.I.1 ¶ 16.

- Using unauthorized photographs and fictitious quotes, the advertisement claimed Plaintiff was leaving his show on Trinity Broadcasting Network because of a four-year battle with an autoimmune disease. Adding to this lie, the advertisement falsely claimed Plaintiff used CBD gummies to replace opioids and painkillers. D.I.1 ¶ 17.

- The faux Fox News advertisement attributed several fictitious quotes to Plaintiff, including:

> a. "My health has not been good for years. I was in a four-year battle with this autoimmune disease, but without getting into all the details, the bottom line is it would leave all my major muscle [sic] in pain pretty much 24 hours a day. This led to extreme sleep deprivation too, which further weekend [sic] my immune system[.]"

> b. "Some older men and women see CBD as having the hallucinogenic effects like 'pot' or 'weed' but that's not true at all. CBD has no THC whatsoever, which means there are absolutely no hallucinogenic effects. As a God-fearing Christian, I would never in my life take drugs of any kind. CBD is completely safe, but the negative stigma around it meant there was still a problem with the CBD products on the market."

> c. "After connecting with the world[-]renowned team of doctors and scientists who found a solution to this problem, I can confidently say CBD is the future of medicine in America. This product is all natural, and is especially helpful for older people like myself [sic] battling high blood pressure, chronic pain, and sleep deprivation. I've never felt healthier[,] and I owe it all to this miracle."

> D. "CBD Cured me and can save American lives[.]"

D.I.1 ¶ 18.

8

- The advertisement referred to CBD gummies as "Huckabee's product[,]" inaccurately claiming Plaintiff is the CEO of the gummy company. D.I.1 ¶ 19. In a deceptive attempt to get Facebook users to quickly buy the allegedly Huckabee-owned and endorsed CBD gummies, the advertisement claimed Plaintiff's main challenge in selling the CBD gummies was that demand exceeds supply because Plaintiff's "CBD wellness line is not only 90% cheaper but also five times more effective than similar offerings from Bayer and other "Big Pharma" companies. *Id.*

- According to Snopes, Meta's Ad Library reveals the advertisements went live on April 9, 2024. They remained visible and accessible to Facebook users until at least June 6, 2024. D.I.1 ¶ 20.

- Shortly after a conversation with Plaintiff about his case, links to the advertisements Plaintiff had shared with undersigned counsel mysteriously became inaccessible.



**This content isn't available right now**
When this happens, it's usually because the owner only shared it with a small group of people, changed who can see it or it's been deleted.

**Go to News Feed**

**Go back**
**Visit Help Center**

D.I.1 ¶ 21.

- Plaintiff has talked to numerous fans who, unfortunately, believed these advertisements were true and purchased the CBD products. Without the unauthorized use of Plaintiff's name, photograph, and likeness, these fans would likely have never purchased the CBD products. D.I.1 ¶ 22.

- Because Meta approved and maintained advertisements that unauthorizedly used and exploited Plaintiff's name, photograph, and likeness, Plaintiff is now wrongly associated with the CBD industry and marijuana use. D.I.1 ¶ 23.

- Facebook's hosting of fraudulent advertisements for CBD products is nothing new. Since as early as 2021, news outlets have reported similar instances where Facebook has approved and maintained advertisements that unauthorizedly exploit the name, image, and likeness of other media personalities to sell CBD products. Some of these fraudulent advertisements included: "Laura Ingraham in the Hot Seat with Big Pharma Following Latest Business Venture"; "Big Pharma In Outrage Over Jeanine Pirro's Latest Business Venture – She Fires Back With This!"; "Fox News Cutting Ties With Sean Hannity Over Breach of Contract?"; and "Big Phrama [sic] in Outrage Over Sanjay Gupta's Latest Business Venture – He Fires Back With This!" D.I.1 ¶ 24.

These factual allegations plausibly demonstrate Meta published the ads for its own commercial advertising use, which has allowed it to cultivate billions of users on its platforms and hundreds of billions of dollars in annual revenue. D.I.1 ¶¶ 1, 7, 8. Critically important, the Broyles Act specifically defines commercial use as advertising, and moreover, the statute does not exempt service providers, such as Meta, just because they

10

may not create the ads. Ark. Code Ann. § 4-75-1103(1). Instead, for Meta, the Arkansas legislature provided a heightened standard as to its knowledge, which the Third Circuit ruled was plausibly pled by Plaintiff within the four corners of his complaint. *Huckabee*, 2026 WL 1817252 at *5.

**C. Meta Admits its Unauthorized Use of Plaintiff's Name, Image, and Likeness was for its Advertising in Violation of the Broyles Act.**

Meta does not deny its use of Plaintiff's name, image, and likeness was for its advertising, nor does it deny it made money from its ads violating the Broyles Act. D.I.18 at 19. Meta attempts to evade its Broyles Act violations by arguing it did not create nor develop the ads. But the Court has already ruled the ads were Meta's first-party speech, and therefore, it is responsible for the ads. D.I.24 at 7-9.

<u>CONCLUSION</u>

For these reasons, the original complaint plausibly pleads Meta's unauthorized commercial use of Huckabee's name, image, and likeness in violation of the Broyles Act, and therefore, its Rule 12(b)(6) motion must be denied.

DATED: July 23, 2026                    Respectfully submitted,

**BELLEW, LLC**

*/s/ Sean J. Bellew*
Sean J. Bellew, Delaware Bar No. 4072
sjbellew@bellewllc.com
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808
(302) 252-4951

**POYNTER LAW GROUP, PLLC**

11

Scott Poynter, Ark Bar 09077*
scott@poynterlawgroup.com
Clay Ellis, Ark. Bar 2023183*
clay@poynterlawgroup.com
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943

*Admitted pro hac vice

Attorneys for Plaintiff

12